```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2
    ---------------------------------------x
 3  ASAD GILANI,

 4                        Plaintiff,

 5                                Case No. 20-cv-1785-CS
         -vs-
 6
    TENEO, INC., PIERS CAREY,
 7
                          Defendants.
 8
    ---------------------------------------x
 9
                                  United States Courthouse
10                                White Plains, New York

11                                August 12, 2021
                                  10:47 a.m.
12
                  ** VIA TELECONFERENCE **
13

14
    B e f o r e:
15                                HONORABLE CATHY SEIBEL
                                  United States District Judge
16

17  A P P E A R A N C E S:

18  ASAD GILANI, Pro Se Plaintiff

19
    WRIGHT CONSTABLE & SKEEN, LLP
20      Attorneys for Defendants
    BY:  MARC A. CAMPSEN
21
    KLEIN, ZELMAN, ROTHERMEL, JACOBS & SCHESS, LLP
22      Attorneys for Defendants
    BY:  JANE B. JACOBS
23

24

25
```

DARBY GINSBERG, RPR (914) 390-4102

1           THE DEPUTY CLERK:  Good morning, Judge.  Judge, this
2    matter is Gilani v. Teneo.  We have on the line the plaintiff,
3    Mr. Asad Gilani, and representing defendants we have Ms. Jane
4    Jacobs and Mr. Marc Campsen.  Our court reporter, Darby, is on,
5    and Andy is on.
6           THE COURT:  All right.  Good morning, everyone.  We
7    have several items of business this morning.
8           I received a letter from Mr. Campsen requesting the
9    opportunity to take a deposition of Dr. Shifrin regarding the
10   November 3rd, 2017, work restriction note that was mysteriously
11   not produced when defendant subpoenaed the doctor, but then
12   after plaintiff's deposition, and after the deposition cutoff,
13   was produced with a later explanation after defendant had filed
14   a summary judgment motion that it had been misfiled.
15          The defendant in its summary judgment motion says that
16   the note is hearsay, and it is, but I considered it because the
17   content of it could be rendered admissible at trial, for
18   example, by Dr. Shifrin's testifying.  So defendant is seeking
19   an opportunity to take that witness's deposition.
20          Why shouldn't I let Mr. Campsen do that, Mr. Gilani?
21          MR. GILANI:  I think the Judge, has the -- good
22   morning.  How are you?
23          THE COURT:  Okay.
24          MR. GILANI:  So basically, I think he can -- Dr.
25   Shifrin can testify on the trial.  We can engage and testify in

1  front of the jury.  So both of the -- I mean, basically, he was
2  sent a note in December by Mount Care, wherever he sent out the
3  subpoena -- request for subpoena, and he -- the doctor talked to
4  him, so he had an opportunity to forward that information to me,
5  and then he had an opportunity to respond when he respond.  So I
6  am okay for Dr. Shifrin to testify as a witness in front of jury
7  on the trial.
8           THE COURT:  Well, I think I am going to allow the
9  deposition.  I don't see any prejudice from it, and although the
10 document -- and the document was not produced until after the
11 deposition cutoff.
12          Now, it's true that defendant could have asked me back
13 when it was produced to take the deposition, but they instead
14 chose to ask me to disregard it, which I didn't do; and, you
15 know, this is going to be -- this is one deposition.  It's going
16 to be an hour or so.
17          MR. GILANI:  Your Honor --
18          THE COURT:  So -- I am sorry?
19          MR. GILANI:  Go ahead.  Sorry, Your Honor.  I will ask
20 you afterwards.
21          THE COURT:  So I don't think it's -- I don't think
22 there is any real prejudice from it.  And who knows?  Maybe it
23 will nudge the parties toward resolving the remaining claims.
24 So --
25          MR. GILANI:  Basically, Judge, we thought the

1   discovery was completed.  Even if he asked -- I mean, basically,
2   when he received -- I mean, I don't mind.  It is a letter from
3   Dr. Shifrin, and I don't mind, but I believe that discovery was
4   completed.  And even though it concerns -- he should have asked
5   you, and in a letter he asked you, but he did not at that time.
6   I mean, it's your decision.
7             THE COURT:  Well, yeah, I am going to allow it.  I
8   mean, he could have asked me back then to open up discovery.
9   You're right about that.  I mean, I think he originally didn't
10  seek to depose Dr. Shifrin during the period where depositions
11  were open because he didn't think that there was anything that
12  merited a deposition in the records, and then he gets something
13  that, you know, shifts the ground of the ADA claim.  And also,
14  you know, it's a little fishy that it wasn't originally
15  produced.  So I understand why defense counsel wants to do the
16  deposition.  It may be that there is a perfectly innocent
17  explanation.  I am not clear as to, you know, what it means that
18  it was misfiled or how it was found or whatever.  So I
19  understand why defense counsel wants to ask those questions now.
20            The explanation that it was misfiled didn't come until
21  after summary judgment was -- the summary judgment motion was
22  filed in January, so I don't think there's been a lack of
23  diligence here, so I am going to allow that one deposition to
24  take place.
25            MR. GILANI:  Well, let me ask -- let me ask you a

1  question.  In your experience -- I cannot request more
2  discovery, which was denied at the same time, but if you are --
3              THE COURT:  Well, if there was something defendants
4  produced after discovery closed that, you know, changed the
5  landscape, you can ask me, but I am not aware of anything that
6  was produced late by them.
7              MR. GILANI:  Okay.
8              THE COURT:  So moving on, the -- I have Mr. Gilani's
9  letter requesting leave to appeal the summary judgment motions
10 on the remaining claims.  That's governed by Rule 54(b).
11 There's been no attempt to argue why the standards of that rule
12 are met here, and I don't think they are.  So I am going to deny
13 the motion for -- which is really for a Rule 54(b)
14 certification.  The Circuit really does not like piecemeal
15 appeals, so unless there is something unusual about this case,
16 which I don't see, we will resolve the remaining claim, and then
17 Mr. Gilani can appeal my summary judgment ruling if he sees fit.
18             So we need to schedule a trial on the one narrow issue
19 that remains.  Seems to me it won't take very long, but let me
20 ask the parties how long they think the trial on that one claim
21 will take.
22             MR. CAMPSEN:  Campsen.  Your Honor, Mr. Campsen for
23 Teneo.  I would -- before discussing a trial, excuse me, Teneo
24 is interested in mediation, so but I can put that on the back
25 burner, but just putting that out there for the remainder of

1  this call.
2          As far as trial, we would anticipate it -- I mean,
3  typically, pre-Covid I would say if it's a jury trial, two days.
4  I don't know how long the jury selection will take, but I think
5  if we can do a jury selection before lunch, then I think we
6  could have our openings and get into the evidence that afternoon
7  on the first day, and we could certainly have maybe two
8  witnesses, depending if Dr. Shifrin is called in the plaintiff's
9  case-in-chief and have closings on the second day, but I think
10 to be safe, if jury selection goes at a normal rate, a normal
11 pace, I think two days, but to be safe, going into a third day,
12 so two and a half days I think would be a fair estimate.
13         THE COURT:  So far during Covid, jury selection, if
14 anything, has been going a little faster.  I have a theory about
15 why that is, which is:  If -- you know, in the before times, if
16 you wanted to get out of jury duty, you had to show up and make
17 your case to the judge.  Once Covid started, we obviously didn't
18 want anybody who was sick or vulnerable to have to come to the
19 building, so we started allowing people to make their case for
20 Covid postponement by phone.  So people who are trying to get
21 out of jury duty call up and they say, you know, I am immuno-
22 comprised or I don't feel well or whatever, and so the
23 people who -- and they get an automatic postponement.  So the
24 people who show up are all willing to serve.
25         So we have been picking juries generally on the

1  pace -- at the same pace, maybe even a little faster in civil

2  cases.  It's taken a little longer in criminal cases because we

3  just don't have the space to get as many jurors as we need in

4  the building in one day, but for civil cases, we have been

5  picking -- you know, a morning is usually plenty of time.  So I

6  will assume, give or take, half a week.

7           We need to build in some time for Dr. Shifrin's

8  deposition.  Why don't we say you will get that done by

9  September 15th?  Is that realistic?

10          MR. CAMPSEN:  I believe so, Your Honor.  I think what

11 I will do is draft the notice of deposition and the subpoena,

12 contact Dr. Shifrin's office, and send it to him to get it

13 noted, and then depending on his availability, of course, I will

14 know the date and explain the Court's given us a deadline of

15 September 15th, and then go by his schedule, but I assume within

16 the next 30 days, that would be fine.

17          THE COURT:  All right.  So we could probably try this

18 case before the end of the year.  So let me -- or maybe in the

19 first quarter of next year.  Let's see, you will have the

20 deposition by September 15th.  So let me set some dates.

21          Joint pretrial order by October 15th.

22          MR. GILANI:  Judge, what is a joint pretrial order?  I

23 am pro se, so I really don't know.

24          THE COURT:  Yeah, you can look at my individual rules,

25 and it explains what it is.  Basically, it's each side has to

1  list all its exhibits, all its witnesses.  It's basically a sort
2  of roadmap for how the trial is going to go.  So -- and you can
3  start thinking about that now.  You don't have to wait until
4  September 15th.  Whatever documents you are going to introduce
5  or other exhibits, whatever witnesses you are going to call.  It
6  requires a bunch of different categories, what kind of damages
7  you are seeking.  So -- and that's all in my individual rules,
8  which you can see on the website.  You have to work together on
9  it because it's one document.  It's not one from each side.
10             MR. GILANI:  Okay.
11             THE COURT:  Then why don't we say motions in limine
12 October 29th.  A motion in limine is a motion that one side or
13 the other makes before the trial asking for a pretrial ruling
14 either that certain evidence should be admitted or certain
15 evidence should be excluded.
16             So, for example, to use an example that I don't think
17 applies here, if a witness had a prior criminal record, the
18 party calling that witness might make a motion to say:  The
19 opposing party shouldn't be allowed to cross-examine that
20 witness about the prior convictions or, you know, that's just
21 one example of motions in limine.  So any evidentiary issues
22 that either side anticipates coming up during the trial, you
23 should make a motion saying the evidence should be excluded or
24 included.
25             You can also say, you know, for example -- again, to

1  use an example that's not present here -- in a fraud case, if
2  the plaintiff is suing a defendant for fraud, and the defendant
3  defrauded someone else, the plaintiff might make a motion
4  saying:  I should be allowed to prove up that this guy defrauded
5  someone else to show that it's more likely that he defrauded me.
6  So that would be a motion to admit some evidence.  The other
7  example I gave was a motion to exclude some evidence.
8             So I don't know if either party will have any motions,
9  but if they do, make them by October 29th, and the other side
10 should respond by November 12th.
11            Proposed jury instructions and voir dire questions,
12 that is questions that the parties would like me to ask the
13 potential jurors, also by November 12th.  And I think what I
14 will -- what we will do is we will say that the earliest
15 possible date for trial is going to be -- well, you know what?
16 I am thinking out loud.  It really depends.  What I do on the
17 trial date depends on whether the doctor is going to testify.
18 What I was about to say is our earliest trial date is going to
19 be November 29th, and you will be on seven days' notice, meaning
20 I will give you at least seven days' notice as to what your
21 trial date is going to be.  It will be no earlier than
22 November 29th, but it might be later.  But if you expect that
23 the doctor is going to testify, I think I probably need to get
24 you a firm date because doctors are notoriously difficult to
25 schedule, and if you don't give them an exact time, you know,

1   weeks in advance, they say they can't come.

2              So let me ask Mr. Clark, my courtroom deputy:  Do we
3   have any window in December that would work and where jury
4   selection dates are available?  If not, this might have to slip
5   into January.

6              MR. CAMPSEN:  Campsen, Your Honor.  While Mr. Clark is
7   looking, I do have a trial scheduled in Maryland beginning on
8   November 22nd and extending into the following -- Thursday, I
9   think the 25th is Thanksgiving, and it is extending and
10  scheduled to extend into the following week until the 30th for
11  planning purposes.

12             THE COURT:  All right.  So we will see if we have
13  something that will be later in December so that you don't have
14  back to back, but I feel like I might not even have a window
15  because I have just scheduled some criminal trials in the last
16  two days.

17             THE DEPUTY CLERK:  Judge, yeah, December might not be
18  good because we have something -- a criminal trial for
19  December 6th, and a civil trial for December 13th.

20             THE COURT:  All right.  So let's -- and then we bump
21  into the holidays.  So let me look at -- we are going to have to
22  do it in January.  So I am going to say January 10th for jury
23  selection and trial, but that's subject to change because
24  depending on the Covid situation, we may need -- and I sure hope
25  by January this surge is over, but I don't know that it will

1   be -- so we need to try the case in a Covid-safe courtroom.  We
2   have three of them in this building, courtrooms that are
3   situated so that everybody can be spread out, but we have eight
4   judicial officers vying for them.  So what we have been doing is
5   because the criminal cases take precedence, we have been setting
6   the schedule with the criminal cases going first, and then we
7   have civil cases as backup.  On weeks where there is no criminal
8   case going, then we are able to give a firm date for a civil
9   case.
10              And then, you know, for example, if on January 10th
11  there was a criminal case set to go, and you guys were the first
12  backup, and then that defendant pleaded out in November, I would
13  be able to tell you then, okay.  We are definitely going
14  January 10th.  Or maybe there won't be any criminal case or any
15  older civil case that wants that date, in which case -- which I
16  will know in November, so I will be able to tell you again, you
17  know, that's our date.
18              The way we have been doing is, you know, the judges
19  sit down, and we schedule out the highest priority cases, and
20  then we fill in the blanks with the remaining cases.  This is
21  going to be fairly low priority because it's a civil case, and
22  it's not that old.  But we have been getting to a lot of the low
23  priority cases because, as you know, cases tend to settle once
24  you give them a real trial date.
25              So January 10th, subject to change, you know, give or

1  take, and I will let you know more conclusively as soon as I
2  know.  We are generally setting the schedule for each quarter in
3  the middle of the previous quarter.  So we are putting in our
4  bids for the last quarter of 2021 this week, and we will have
5  our schedule by the end of the month for the last quarter.  So
6  it will be mid to late November that we will finalize the
7  schedule for January.  So I will let you know as soon as I know
8  more.
9           Now let me revert back to something Mr. Campsen said.
10 What about resolving this one remaining claim?
11           MR. CAMPSEN:  Campsen, Your Honor.  I have discussed
12 with my client potential mediation describing to them how the
13 case has been narrowed, and I thought that in light of
14 Mr. Gilani's motion to appeal the interlocutory orders that I
15 didn't get authorization today to definitively go to mediation
16 because I just wasn't sure what was going to happen, but they
17 are interested in mediation because the case is so narrowed, and
18 I think mediation may help explain to both parties exactly where
19 the case stands now, how it's been streamlined, and the limited
20 monetary damages that remain available, if any.
21           THE COURT:  So your --
22           MR. CAMPSEN:  Certainly defendant would be available.
23           THE COURT:  Your client would be willing to mediate
24 just the one claim and allow Mr. Gilani to appeal as to the
25 rest?

1    MR. CAMPSEN:  No.  I misspoke, I think.  No, Your
2    Honor.  The mediation -- the mediation would be as to resolving
3    the final claim, but any settlement would have to be release of
4    all claims.  So we wouldn't settle the one and then allow appeal
5    of the remainder.
6              THE COURT:  Is that something you are interested in,
7    Mr. Gilani?
8              MR. GILANI:  So about -- for my clarification on what
9    is the procedure for the mediation?  And I would be interested,
10   but I need to understand the procedure.
11             THE COURT:  There are volunteer lawyers who, you know,
12   are approved and trained by the mediation office of the court to
13   conduct mediations, and a lot of them specialize in employment
14   cases.  The logistics of it are, I would do a referral to the
15   mediation office.  Then the mediation office would seek out a
16   mediator, and this is all happening privately.  I don't learn
17   anything about it.  I don't learn who the mediator is or any of
18   that stuff, and the mediator would set up a meeting.  Generally,
19   they ask each side to submit sort of a pre-mediation statement
20   so that the mediator can understand each side's position or
21   sometimes the mediator talks to the parties on the phone
22   separately, and then, you know, gets you together in a room and
23   tries to see if the case can be resolved.
24             So right now, the only live claim is the failure to
25   accommodate, and as Mr. Campsen pointed out, that is probably

1   going to result in a much smaller recovery than a successful

2   pursuit of the remaining claims might have.  So at this point,

3   you will have to sort of balance what kind of luck you think you

4   are going to have on appeal versus, you know, maybe getting some

5   relief now because what Mr. Campsen is positing and not

6   committing to is that if you can reach a dollar agreement, and

7   you agree not to appeal, then you will get your satisfaction

8   sooner, and it will save his client having to defend the

9   decision on appeal.

10              Obviously, I think the decision is right, but that

11  doesn't mean the Court of Appeals will.  They usually -- you

12  know, I am sure you understand that most appeals are an uphill

13  battle, but sometimes judges make mistakes.  So you will have to

14  balance in your own mind whether you might be better off taking

15  some settlement now and giving up your right to appeal or

16  whether you think my decision is wrong enough that the Circuit

17  is going to reverse it, and you will come out ahead.

18              The risk, obviously, is if they offer you a

19  settlement, you turn it down, we go to trial on the last claim;

20  you don't win, you bring the appeal, you don't win, then you

21  have nothing.  So, you know, there is risks and potential

22  rewards for both sides.  That's usually the formula for a

23  successful settlement.

24              MR. GILANI:  I am willing to do that.  I take your

25  word for it.  You explained it to me, and I think that I want to

1  close out my -- this case, right?  So I am willing to do that,
2  and if you come up with some kind of mediation settlement, I
3  would not go to appeal, so -- and I think you explained very
4  well.
5           THE COURT:  All right.  Well, I will do a referral to
6  mediation, and if you think you are getting somewhere in the
7  mediation, and you want to pause the -- well, let me ask another
8  question before we get to it.
9           What I described is the court volunteer mediation
10 program.  The other option would be to go back to Magistrate
11 Judge Davison to try to resolve it.  My sense is maybe a fresh
12 start with an outside mediator would be more successful here,
13 but I am certainly happy to send you back to Judge Davison if
14 that's what the parties would prefer.  Anybody haven an opinion?
15          MR. CAMPSEN:  Campsen, Your Honor.  Sorry.  Campsen,
16 Your Honor.  We would be okay with Judge Davison.  I think we
17 are hesitant to -- and maybe -- I can't speak for plaintiff, but
18 maybe that would be his concern, too -- is to expand the fees in
19 a private mediator.  I think Judge Davison is familiar.  I know
20 there was some issues, you know, a lot of discovery issues going
21 back and forth, but certainly he has a grasp of --
22 unfortunately, the substance of the case I think to a certain
23 extent.
24          THE COURT:  Let me be clear, the mediators who you get
25 through the court are free, and some of them are excellent.

1  They just do it as their pro bono.
2           MR. CAMPSEN:  Okay.
3           THE COURT:  So it won't cost anybody anything.
4           Do you have a preference, Mr. Gilani?  Do you want a
5  volunteer mediator or Judge Davison?
6           MR. GILANI:  Judge Davison.
7           THE COURT:  You want to go back to Davison?  I just
8  didn't hear you.  Did you say you want to go back to Judge
9  Davison?
10          MR. GILANI:  Judge Davison, yes.  He has -- yes.
11          THE COURT:  All right.  Then I will refer you to Judge
12 Davison for settlement, and if you think you are getting
13 somewhere, and you want to pause this schedule that we have set
14 today because you think you are going to resolve it, you can let
15 me know that, but only if you think, you know, you are really at
16 the finish line.
17          MR. GILANI:  Judge, I have a question for you.  Why
18 don't we pause everything right now, and -- no?  And let it go
19 to Judge Davison to see how it goes.  Then we can start, so we
20 are not wasting time, if there is a mediation, right?
21          THE COURT:  Well, I would be willing to do that if,
22 you know, you are on the same ballpark, but maybe you are not on
23 the same ballpark.  And frankly, you know, there is nothing like
24 a trial date looming to get the parties to focus.  So in my
25 experience, it's the trial date that leads the parties to

1  settle; and if you don't have that looming, it's not nearly as
2  effective an exercise.  But if you get -- if you are getting
3  somewhere, you know, if your demand is not out of the realm of
4  possibility or, you know, your conversation seems like it's
5  getting somewhere, and the parties are in agreement that they
6  want to pause the schedule or Judge Davison thinks it's a good
7  idea, I would be willing to do that, but not -- not yet.
8              MR. GILANI:  Thank you.
9              THE COURT:  All right.  I think that covers what we
10 need to cover today.  Anything else either side wants to raise?
11             MR. GILANI:  No, Judge.
12             MR. CAMPSEN:  Campsen.  No, Your Honor.  Thank you.
13             MR. GILANI:  Only thing I would not know when I come
14 up with that pretrial order that how long it takes.  I have to
15 review your -- review what takes place and how, what I have to
16 present.  So, you know, it would be -- I can't give the days.
17 It could be four days.  It could be five days.  It could be
18 three days.  It could be a day, but I think I have to review it,
19 which I haven't reviewed anything.  So I will get back to you on
20 that.
21             THE COURT:  Well, the information in the -- for the
22 joint pretrial order, I think given the narrowed claims, is not
23 going to be voluminous; and, you know, you have got 60 days
24 until it's due, so I am sure you will be able to figure it out.
25             All right.  Thank you both, and everybody stay well.

```
1  Bye-bye.
2           (Time noted:  11:18 a.m.)
3                       -o0o-
```