UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ASAD GILANI,

                                        Plaintiff,

          - against -

TENEO, INC., PIERS CAREY, RACHEL HEAD,
BRETT AYRES, STEVE EVANS, and TENEO
USA, INC.,

                                        Defendants.
-------------------------------------------------------------x

**OPINION & ORDER**

No. 20-CV-1785 (CS)

<u>Appearances</u>:

Asad Gilani
Armonk, New York
*Pro Se Plaintiff*

Marc A. Campsen
Wright, Constable & Skeen, LLP
Baltimore, Maryland

Jane B. Jacobs
Klein Zelman Rothermel Jacobs & Schess LLP
New York, New York
*Counsel for Defendants*

<u>Seibel, J.</u>

        Before the Court is the second motion for summary judgment of Defendant Teneo Inc.

("Teneo").  (ECF No. 263.)  The Court previously granted summary judgment in Teneo's favor

on Plaintiff's wrongful termination, retaliation, failure to promote, disparate treatment, and

hostile work environment claims.  (*See* ECF No. 201.)  Here, Teneo moves for summary

judgment on Plaintiff's remaining claim for failure to accommodate his disability with regard to travel.[1]  For the following reasons, Teneo's motion is GRANTED.

## I.  <u>BACKGROUND</u>

The full background of this matter is set forth in the Court's August 4, 2021 Opinion and Order.  (*Id.* at 1-20.)  The Court recites below only the facts and procedural history relevant to this motion.  The following facts are undisputed except where noted.[2]

### A.  <u>Facts</u>

Plaintiff was employed by Teneo from September 26, 2016 until June 26, 2019, first as a solutions engineer and then as a solutions architect.  (*See* ECF No. 201 at 3, 9, 15.)  On September 25, 2017, he injured his back while installing equipment.  (D's 56.1 Stmt. ¶ 2; P's 56.1 Resp. ¶ 2.)

---

[1] The Court previously dismissed Plaintiff's failure-to-accommodate claim as it relates to lifting, (*see* ECF No. 201 at 57-58), and has since denied Plaintiff's motion to reconsider that ruling, (*see* Minute Entry dated Nov. 23, 2021).  Accordingly, the portions of Plaintiff's submissions on this motion that relate exclusively to lifting are irrelevant and will not be addressed.

[2] Plaintiff purports to dispute nearly all of the facts recited in Teneo's Local Rule 56.1 Statement, (ECF No. 264 ("D's 56.1 Stmt.")), but in many cases fails to identify the grounds for disputing the facts or fails to point to evidence or affidavits that provide a basis for any such dispute, (*see* ECF No. 288 ("P's 56.1 Resp.")).  Under Local Rule 56.1, any portion of Defendant's 56.1 statement that is properly supported, and that Plaintiff does not specifically deny *with evidence*, is deemed admitted for purposes of this motion.  *See Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003); *Universal Calvary Church v. City of N.Y.*, No. 96-CV-4606, 2000 WL 1745048, at *2 n.5 (S.D.N.Y. Nov. 28, 2000); L.R. 56.1(c); L.R. 56.2.  (The Court will send Plaintiff copies of any unreported decisions cited in this Opinion and Order.)  *Pro se* litigants are not excused from the requirements of Local Rule 56.1.  *SEC v. Tecumseh Holdings Corp.*, 765 F. Supp. 2d 340, 344 n.4 (S.D.N.Y. 2011).  Plaintiff also failed to follow my Individual Practices, which required him to "reproduce each entry in the moving party's Rule 56.1 Statement, and set out [his] response directly beneath it."  Individual Rules of Practice 2(C)(1) (updated Feb. 3, 2020).  I explicitly directed him to follow this procedure at the November 23, 2021 pre-motion conference.  (*See* Minute Entry dated Nov. 23, 2021.)  I have reviewed and considered Plaintiff's 56.1 Response, but because it does not reproduce Teneo's factual assertions I will cite to one document or the other, or both where necessary.

Plaintiff testified at his September 22, 2020 deposition that he spoke with his supervisor, Steve Evans,[3] right after the September 25, 2017 injury and requested an accommodation, which included a request that Teneo modify his travel.  (D's 56.1 Stmt. ¶¶ 4-5.)[4]  Plaintiff's March 12, 2021 Declaration, submitted in support of Plaintiff's motion for summary judgment and attached as an exhibit to Teneo's Local Rule 56.1 Statement on this motion, states that Plaintiff requested an accommodation from Steve Evans in person in October 2017,[5] and reminded him of the request in a one-on-one conversation.  (P's 3/12/21 Decl. ¶ 99; D's 56.1 Stmt. ¶ 9.)  He stated in the declaration that he never heard back from Mr. Evans, and never heard from Rachel Head (Teneo's Vice President of Human Resources) about an accommodation.  (P's 3/12/21 Decl. ¶ 99; D's 56.1 Stmt. ¶ 9.)[6]  In his deposition, when asked if he had requested not to travel after his injury, he responded,

> Yes, I told Steve Evans one to one, right after the – Because what happened was when I had an injury second day I had to travel to France . . . .  And then went to France and then I had to do work for two nights for Schneider Electric.  I reported to Steve.  I said, Steve, [c]an you basically do some accommodation, but he never came back.  So I didn't.  I just managed my pain because I had to work.

---

[3] Evans was based in Virginia, (ECF No. 154-6 ¶ 2), while Plaintiff worked out of his home in Westchester County, New York, (ECF No. 94 ("SAC") ¶ 10).

[4] Plaintiff purports to dispute these two paragraphs of Teneo's Local Rule 56.1 Statement, but paragraph 4 directly (and accurately) quotes Plaintiff's deposition, (compare D's 56.1 Stmt. ¶ 4, with ECF No. 264-2 at 187:24-188:11), as does paragraph 5, (compare D's 56.1 Stmt. ¶ 4, with ECF No. 264-2 at 189:19-22).

[5] Plaintiff alleged that this in-person conversation occurred at an event in New York City called "Riverbed Disrupt."  (ECF Nos. 172, 264-5 ("P's 3/12/21 Decl.") ¶ 99.)  He now places the "Riverbed Disrupt" event as occurring on November 2, 2017.  (ECF No. 295 ("P's 12/23/21 Decl.") ¶ 21; ECF 289-12.)

[6] Plaintiff asserts that Teneo mischaracterizes and selectively quotes his March 12, 2021 declaration.  (P's 56.1 Resp. ¶ 9.)  This is simply not the case.  Teneo directly quotes large portions of that declaration and does not omit anything material that amounts to a mischaracterization or selective quotation.  (Compare D's 56.1 Stmt. ¶ 9, with P's 3/12/21 Decl. ¶ 99.)  Plaintiff also confusingly asserts that his own declaration is hearsay.  (P's 56.1 Resp. ¶ 9.)

(ECF No. 264-2 at 188:1-12.)[7]  He further testified, in response to a question asking whether he asked Evans to be excused from travel between January and June 2019, that he "only asked Steve Evans right after my herniation disc [to] modify the travel.  Never heard from him at that time so I managed."  (*Id.* at 189:19-22.)

Plaintiff got an MRI on October 12, 2017, which revealed three herniated discs.  (ECF No. 264-3.)  On October 20, 2017, Ms. Head emailed Mr. Evans and Piers Carey (Teneo's Chief Executive Officer) to state that she had been in communication with Plaintiff about his back injury, and that "the MRI scan results aren't looking good."  (ECF No. 264-4; D's 56.1 Stmt. ¶ 8.)[8]  Mr. Evans responded, describing a call with Plaintiff in which they had discussed Plaintiff's back injury.  (ECF No. 264-4; D's 56.1 Stmt. ¶ 7.)  Mr. Evans asked in the email, "Should we restrict [Plaintiff] from traveling or take any other preventative actions?"  (ECF No. 264-4.)  The record does not reflect any response.

Plaintiff was examined by Dr. Seth Shifrin on November 3, 2017.  (D's 56.1 Stmt. ¶ 10.)  Dr. Shifrin signed a work restriction note on that date (the "Shifrin Note"), which stated that Plaintiff was restricted from "Lifting from floor, Squatting or Bending" and from "travel due to back injury until further notice."  (ECF No. 264-9.)[9]  Plaintiff testified that he never gave this or

---

[7] It may be that Plaintiff was trying to say that the conversation at the Riverbed Disrupt event – over a month after the trip to France, which was in late September 2017, (P's 12/23/21 Decl. ¶ 20) – was the one-on-one reminder of the request previously made around the time of the France trip.

[8] Teneo is correct that the Court's August 4, 2021 Opinion and Order contains a typographical error, (ECF No. 201 at 57), referring to this email chain as occurring on October 20, 2019 instead of October 20, 2017.

[9] Dr. Shifrin testified at his deposition on September 9, 2021 that the phrase "until further notice" in his November 3, 2017 work restriction note was intended to mean until Plaintiff was examined by Dr. Omar Syed (to whom Dr. Shifrin referred Plaintiff), at which point Dr. Shifrin "expected Dr. Syed to make his own determination and decide on work restrictions at that time."

(D's 56.1 Stmt. ¶¶ 17-18.)  The visit with Dr. Syed occurred on November 27, 2017, and he did not issue any work restriction.  (ECF No. 264-7 at TI00534-37; *see* ECF No. 264-6 at 182:3-23.)  On October 18, 2021, after Dr. Shifrin was deposed, Plaintiff apparently was examined again by Dr. Shifrin, who gave him a work restriction stating that Plaintiff could return to work at his current employer on November 1, 2021, with restrictions "until seen by Neurosurgery."  (*See* P's 56.1 Resp. ¶¶ 17-18; ECF No. 289-49.)  Plaintiff claims that the November 3, 2017 note reflected a "permanent" work restriction while the October 18, 2021 note reflects a temporary restriction.  (*See id.*)  On December 13, 2021, after the instant motion was filed, Plaintiff obtained from Dr. Shifrin a document, (ECF No. 289-15), in which Dr. Shifrin reports that Plaintiff told Dr. Shifrin that Dr. Shifrin's clinical note dated November 3, 2017 contains errors.  Specifically, according to Dr. Shifrin, Plaintiff told Dr. Shifrin that on November 3, 2017, Plaintiff said he had trouble walking and standing, not sitting and standing as reported in the note, and that his urinary incontinence started after his back injury, not at an unrecalled date, as reported in the note.  (*Id.*)  In the document Dr. Shifrin makes clear that he has no recollection of the November 3, 2017 visit.  Because this document is neither authenticated nor timely disclosed, I would be justified in ignoring it, were it relevant.  In any event, this rather transparent effort on Plaintiff's part to rewrite history in a way he imagines would be helpful to him on this motion is troubling, to say the least, but ultimately ineffectual and irrelevant in light of my disposition.

Plaintiff seems to have tried the same thing with Dr. Evan Hawkins, who Plaintiff had seen on June 21, 2019 and who said in a note of the same date that Plaintiff could return to work without restrictions on June 26, 2019.  (ECF No. 264-7 at TI 00528.)  Plaintiff argues, without citing evidence, that "Dr. Hawkins stated, upon review of letters given to the patient on June 21, 2019 and July 1, 2019 an error was made with respect to the patient activity restrictions."  (P's 56.1 Resp. ¶¶ 17-19, 25.)  While he does not cite it in his Local Rule 56.1 response, attached as an exhibit to the Affidavit of Saeeda Gilani, (ECF No. 289 ("S. Gilani Aff.")), is a "Health Care Provider Accommodation Assessment Form," which purports to be a request by an employer for information about an employee who has sought an accommodation, (ECF No. 289-35).  It does not state what employer is making the request, and it appears to be signed by Dr. Hawkins on December 20, 2021 – again, after the filing of the instant motion.  (*Id.*)  It states, among other things, "avoid travel, work remotely when possible."  (*Id.* at 2.)  At the top of this document is a typed, unsigned statement, "Initial Report Based on 6/21/2019 Office Visit – Dr. Hawkins."  (*Id.* at 1.)  Nothing in the document, which may have been generated in response to a request from Plaintiff's current employer, states that Dr. Hawkins's earlier note was "an error," but its submission in connection with the instant motion appears to be an effort by Plaintiff to have Dr. Hawkins retroactively impose a travel restriction he did not see fit to impose at the time, or at least to have the Court believe he has done so.  This effort is likewise ineffectual and irrelevant in light of my disposition.  As with Dr. Shifrin's December 2021 document, this document from Dr. Hawkins is neither authenticated nor timely disclosed, and thus I would be justified in ignoring it even if it were relevant.  It is not, because it does not speak to Plaintiff's physical condition or ability to travel prior to June 21, 2019, and Plaintiff did not travel for Teneo at any point after that date.  (*See* P's 12/23/21 Decl. ¶ 26.)  But Plaintiff's machinations are disturbing.

any other work restriction note or medical documentation to any Teneo employee.  (ECF No. 264-6 at 157:18-158:3, 182:3-23; *see* ECF No. 180-21 at 161:10-22.)  Dr. Syed examined Plaintiff on November 27, 2017.  (ECF No. 264-7 at TI00534-37.)  Plaintiff testified at his deposition that after his November 27 appointment with Dr. Syed, he did not seek any further medical evaluation or treatment for his back injury until June 21, 2019.  (ECF No. 264-6 at 199:14-200:2.)

In opposition to this motion, Plaintiff asserts that there were six occasions on which he asked Teneo for an accommodation for his back injury:  In addition to requests allegedly made on September 25, 2017 (the date of his injury) and October 20, 2017 (the date of the email exchange between Evans and Head), Plaintiff asserts that on November 8, 2017, he hand-delivered the Shifrin Note to Mr. Evans; on October 19, 2018 he requested an accommodation from Mr. Evans over Skype during a one-to-one meeting; on February 18, 2019 he hand-delivered the Shifrin Note to Rachel Head and requested an accommodation; and on June 21, 2019 he requested an accommodation in a voice message left over Skype for Brett Ayres, another Teneo employee.  (P's 12/23/21 Decl. ¶¶ 20-26.)

In its reply papers, Teneo submits declarations from Mr. Evans and Ms. Head.  Mr. Evans states that Plaintiff never gave him a copy of the Shifrin Note, and that Plaintiff never asked him for an accommodation on either November 8, 2017 or October 18, 2019.  (ECF No. 301-3 ¶¶ 3-4.)  Ms. Head similarly states that Plaintiff never gave her the Shifrin Note on February 18, 2019 or on any other date.  (ECF No. 301-2 ¶ 3.)  She also states that Plaintiff never made a travel accommodation request to her.  (*Id.*)  Both declarations state that on June 21, 2019 Plaintiff took sick leave from work until June 26, 2019, and that his employment was terminated on June 26, 2019.  (ECF No. 301-2 ¶¶ 4-5; ECF No. 301-3 ¶¶ 5-6.)

On July 1, 2019, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging – as relevant here – that Teneo failed to accommodate a known disability by requiring him to lift and discriminated against him with regard to his disability.  (ECF No. 264-10.)  The EEOC charge did not specifically mention travel.  (*Id.*)

## B.   Procedural History

This is Teneo's second motion for summary judgment in this matter.  On August 4, 2021, the Court denied Plaintiff's motion for summary judgment on all claims and granted Teneo's motion for summary judgment on Plaintiff's claims for (1) wrongful termination, (2) retaliation, (3) failure to promote, (4) disparate treatment, and (5) hostile work environment, based on (a) race, (b) religion, (c) national origin, (d) age, and (e) disability, in violation of (i) Title VII, (ii) the ADEA, (iii) the ADA, and (iv) the New York State Human Rights Law ("NYSHRL").[10]  The only claim to survive the cross-motions for summary judgment was Plaintiff's claim that Teneo failed to accommodate his disability with regard to travel.[11]

On August 11, 2021, Teneo moved to reopen discovery for the purposes of deposing Dr. Shifrin, (ECF No. 204), and Plaintiff opposed the motion on the same date, (ECF No. 206).[12]

---

[10] The Court liberally read Plaintiff's Second Amended Complaint to state those claims. (ECF No. 201 at 22-23.)

[11] In the August 4, 2021 Opinion and Order, the Court construed Plaintiff's failure-to-accommodate claim as only under the ADA.  Plaintiff has since asserted that his failure-to-accommodate claim was brought under the New York State Human Rights Law as well as the ADA.  (*See, e.g.*, ECF No. 217 at 5; ECF No. 286 ("P's Opp.") at 1.)  That claim is not clearly made out in his SAC, but to the extent it is, the Court, as discussed below, declines to exercise supplemental jurisdiction.

[12] As detailed in the August 4, 2021 Opinion and Order, the Shifrin Note was disclosed by Plaintiff after the deposition deadline and was not part of the set of certified medical records Teneo originally received from Dr. Shifrin's medical group.  (ECF No. 201 at 17 & n.19.)  Dr.

Also on that date, Plaintiff moved for leave to file an interlocutory appeal of the Court's August 4, 2021 Opinion and Order.  (ECF No. 205.)  The Court held a status conference on August 12, 2021, at which the Court granted Defendant's request to depose Dr. Shifrin, denied Plaintiff's motion for interlocutory appeal, set a trial schedule, and referred the case to Magistrate Judge Paul Davison for settlement discussions.  (*See* Minute Entry dated August 12, 2021; ECF No. 207.)  Teneo took Dr. Shifrin's deposition on September 9, 2021.  (*See* ECF No. 264-8.)  Both parties thereafter moved for reconsideration of the Court's August 4, 2021 Opinion and Order. (ECF Nos. 216, 218.)

On August 19, 2021, Teneo filed a pre-motion letter requesting leave to file a motion to amend its answer to the Second Amended Complaint.  (ECF No. 209.)  Plaintiff filed a letter in opposition, (ECF No. 212), and on September 17, 2021, the Court held a conference at which it set a briefing schedule for the motion to amend and scheduled a bench ruling for November 18, 2021.  (*See* Minute Entry dated Sept. 17, 2021).  Plaintiff attached to his briefing on that motion uncertified medical records that he had never previously disclosed to Teneo.  (*See* ECF No. 217 Exhibits 5, 6, 7, 8, 9, 9D, 10; ECF No. 224 at 1-2.)

On October 25, 2021, while the motion to amend was pending, Plaintiff filed a seventeen-page motion to disqualify me on several grounds, including the fact that his case was transferred to White Plains from Manhattan; my supposed prior relationship with Ms. Jacobs, who previously had a case before me (which was reassigned to me on October 29, 2018 and dismissed by stipulation less than a month later, without any appearances before me by counsel); his dissatisfaction with certain rulings in this case; and difficulties he had with the Clerk's office

---

Shifrin submitted a document explaining that the Note had not been produced sooner because it had been "misfiled."  (*Id.*)

getting certain documents filed.  (ECF No. 221.)  On the same day I denied his motion as frivolous.  (ECF No. 223.)[13]

On November 12, 2021, Teneo filed a proposed verdict form, erroneously giving the document a description on ECF that read "AGREEMENT FOR VERDICT by Jury of Less than Six Members."  (ECF No. 232.)  On the same date, Plaintiff sent to the Court's *Pro Se* Office for filing a response to Teneo's filing, stating that there was no such agreement.  (ECF No. 243 at 11; *see* ECF No. 236.)[14]  Plaintiff also emailed that response to chambers, copying Teneo's counsel.  (ECF No. 243 at 11.)  Teneo's counsel immediately responded that the filing was inadvertent and that they had already notified the Clerk of the error and requested that the filing be removed.  (ECF No. 243 at 13.)  Plaintiff responded, "This part of the record [cannot] be removed," and stated that he would be filing a pre-motion letter for a sanctions motion under Rule 11.  (*Id.* at 12.)  Plaintiff filed a "letter" dated November 13, 2021, which was really a seven-page Rule 11 motion seeking sanctions in connection with Teneo's erroneous filing.  (*Id.* at 1-7.)  On the same day, Plaintiff filed a second letter motion pursuant to Rule 11, apparently accusing Teneo of attempting to improperly delay trial.  (ECF No. 245.)  On November 15, 2021, I issued separate orders denying each motion as frivolous, noting in the order denying the first Rule 11 motion that "[i]t is obvious that the wrong document title was selected" by Teneo, and that "there is no indication that this was anything but an innocent mistake."  (ECF No. 244.)

---

[13] On October 28, 2021, Plaintiff initiated a mandamus action before the Second Circuit. *See Gilani v. Teneo*, No. 21-2714 (2d Cir.).  Through that action, Plaintiff sought, among other things, to stay proceedings in this Court.  That application has been denied by the Second Circuit.  (*See* ECF No. 307.)

[14] Plaintiff added that the jury would be the "standard" twelve jurors, (ECF No. 236 at 1), apparently unaware that the applicable Federal Rule allows for civil juries to be comprised of as few as six and as many as twelve members, Fed. R. Civ. P. 48(a), and that six to eight is standard in this District.

I further warned Plaintiff that he "would be well advised not to waste his time, or the Court's, on applications like this in the future." (*Id.*)  In the order denying the second Rule 11 motion, I again "strongly urge[d] Plaintiff to focus on the merits of the case rather than attempting to get opposing counsel sanctioned for innocuous actions." (ECF No. 247.)

On November 12, 2021 (the same date on which Plaintiff insisted that he would be filing the first of two Rule 11 motions), Plaintiff also petitioned the Court, via an email to chambers, to adjourn the previously scheduled bench ruling on Teneo's motion to amend its answer.  He explained that he was on disability, per his doctor, and needed the Court to adjourn the November 18, 2021 proceeding until on or after November 22.  (ECF No. 233.)  The Court granted the request and rescheduled the bench ruling to November 23, 2021.  (*Id.*).

At the November 23, 2021 proceeding, the Court issued a bench ruling granting Teneo's motion to amend its answer and set a briefing schedule for the instant summary judgment motion.  (*See* Minute Entry dated Nov. 23, 2021.)  The Court also denied Plaintiff's motion for reconsideration of the August 4, 2021 Opinion and Order, and granted leave for Teneo to make its reconsideration arguments related to Dr. Shifrin's deposition as part of its summary judgment motion.  (*Id.*)  In addition, the Court ordered Plaintiff to supplement his disclosures and turn over to Teneo, no later than November 26, 2021, all previously undisclosed documents on which he intended to rely.  (*Id.*)  The Court also warned the parties that there would be no extensions to the briefing schedule (given that, at the time, jury selection was set to begin on January 10, 2022). (*Id.*)  On November 24, 2021, Teneo filed its amended answer, adding the affirmative defense that Plaintiff's failure-to-accommodate claim was time-barred.  (ECF No. 255.)

Teneo filed the instant motion on December 3, 2021.  (ECF No. 263.)  On the same day, despite the Court's warning, Plaintiff sought a ten-day extension of his time to file his opposition

to this motion, citing health issues.  (ECF No. 271.)  The Court denied this motion, explaining

that because of the upcoming trial date, a tight briefing schedule was necessary.  (*Id.*)[15]

On December 9, 2021, based on the Court's availability and scheduling issues in the

White Plains courthouse, the Court issued an order moving jury selection from January 10, 2022

to February 15, 2022.  (ECF No. 274.)  In light of the change, the Court extended the briefing

schedule for this motion, making Plaintiff's opposition due on December 20, 2021 and Teneo's

reply due on December 28, 2021.  (*Id.*)  On December 19, 2021, Plaintiff asked for another

extension, again citing health issues, and the Court granted his request, giving him until

December 23, 2021 to file his papers and giving Teneo a corresponding extension to January 3,

2022.  (ECF No. 283.)  On December 20, 2021, the Court granted Teneo's request for an

additional extension to January 6.  (ECF No. 285.)

Plaintiff filed his opposition papers on December 23, (P's Opp.; ECF Nos. 288-293), and

a "corrected" declaration on December 24, (P's 12/23/21 Decl.).  Plaintiff's filings included over

fifty exhibits attached to a declaration signed by his wife, Saeeda Gilani, (S. Gilani Aff.), almost

half of which had apparently never been disclosed to Teneo.[16]  Plaintiff's papers also included

---

[15] Four days after requesting this briefing extension, Plaintiff filed a letter seeking reconsideration of the Court's August 4, 2021 Opinion and Order, this time on the ground that Teneo's Local Rule 56.2 disclosure had been defective, and accusing the Court (again) of bias against him.  (ECF No. 272.)  The Court denied the request, explaining that for several reasons Plaintiff had clearly not been prejudiced by the earlier defect.  (ECF No. 273.)  The Court further suggested that Plaintiff – whose medical issues apparently, and happily, did not prevent him from working on his case – use his time to focus on the substance of the pending summary judgment motion.  (*Id.*)

[16] According to Teneo, Plaintiff did not supplement his disclosures by November 26, 2021, as the Court had ordered him to do if he wanted to rely on previously undisclosed evidence.  (*See* ECF No. 301 at 3-4; Minute Entry dated Nov. 23, 2021.)  Plaintiff on November 24, 2021 emailed defense counsel and chambers a note that read:  "Dear Pro Se[,] Please upload additional documents which were produced on the reconsideration[.]  Asad," but no exhibits were attached and it was not sent to the Court's *Pro Se* Office.  (ECF No. 301-1 at 2.)  It is not

affidavits from four of Plaintiff's siblings, (ECF Nos. 290-93), none of whom had ever been disclosed as witnesses, according to Teneo. (*See* ECF No. 301 at 4; *see also* ECF No. 219-1 (Plaintiff's witness list annexed to the parties' Joint Pre-Trial Report).) Over the next several days Plaintiff corresponded with chambers and the Clerk's office, requesting to strike certain duplicative or erroneously filed documents; the Court eventually ordered certain docket entries stricken and deemed ECF No. 288 to be Plaintiff's Local Rule 56.1 response. (ECF Nos. 298-300.) On January 5, 2022, Plaintiff filed further supplemental exhibits that he stated he had forgotten to attach to Ms. Gilani's affidavit. (ECF No. 302.) The Court then ordered that he not file anything further in connection with the instant motion. (ECF No. 303.)

## II.   <u>LEGAL STANDARD</u>

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

---

clear what asking the *Pro Se* Office to "upload" these unspecified documents would mean in any event, particularly because the exhibits to both sides' motions for reconsideration were already on the docket. Moreover, the previously undisclosed documents on which Plaintiff relies in his opposition here go beyond the records Plaintiff attached to his reconsideration motion. None of these exhibits are relevant to this Court's decision, but if they were, the Court would be within its discretion to disregard them. *See R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 22 (S.D.N.Y.), *opinion adopted*, 271 F.R.D. 55 (S.D.N.Y. 2010).

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (cleaned up).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). Where a declaration is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." *Id.* 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

Documents are admissible only if they are authenticated by extrinsic evidence or self-authenticating.  *E.g.*, *Sys. Agency v. Villanueva*, No. 19-CV-6486, 2020 WL 7629879, at *1 (S.D.N.Y. Dec. 22, 2020).  Accordingly, "documents that are not attached to an affidavit made on personal knowledge setting forth facts that would be admissible in evidence and sufficient to authenticate the document cannot be considered on summary judgment."  *Id.* (cleaned up).  But "[m]aterial relied upon at summary judgment need not be admissible in the form presented on the motion; as long as the evidence will be presented in admissible form at trial, it may be considered on summary judgment."  *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15-CV-8459, 2018 WL 3364388, at *2 (S.D.N.Y. July 9, 2018) (cleaned up).  The proponent of the evidence "must show that the evidence could be rendered in an admissible form at trial."  *Metro. Enter. Corp. v. United Techs. Int'l Corp.*, No. 03-CV-1685, 2005 WL 2300382, at *6 (D. Conn. Sept. 21, 2005).

*Pro se* litigants must be afforded "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010), "particularly where motions for summary judgment are concerned," *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014).  But *pro se* plaintiffs are not exempt from the "rules of procedural and substantive law."  *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (cleaned up).

## III.   <u>DISCUSSION</u>

Teneo argues that it is entitled to summary judgment on Plaintiff's ADA failure-to-accommodate claim because (1) the claim is time-barred because it accrued more than 300 days before he raised it with the EEOC; (2) Plaintiff cannot demonstrate that he was disabled beyond November 27, 2017 or for any activity other than lifting; and (3) even if Plaintiff was disabled for purposes of travel in the period between November 3 and November 27, 2017, Teneo did not

fail to accommodate that disability.  The Court need not reach the two latter arguments because Defendant has shown that Plaintiff did not make a travel-related accommodation request within 300 days of his EEOC filing on July 1, 2019, and Plaintiff has not put forth evidence sufficient to raise a genuine factual dispute on the point.

### A.    Timeliness of Plaintiff's Failure-to-Accommodate Claim

To make out a *prima facie* case of failure to accommodate, a plaintiff must establish that "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."  *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009) (cleaned up).

Under the ADA, Plaintiff had 300 days from the date of the alleged unlawful action in which to file his complaint.  *See* 42 U.S.C. § 2000e-5(e)(1); *Harris v. City of N.Y.*, 186 F.3d 243, 247 & n.2, 248 (2d Cir. 1999) (charges filed with New York Division of Human Rights are subject to 300-day statute of limitations under 42 U.S.C § 2000e-5(e)(1)).  A failure-to-accommodate claim accrues when the requested accommodation is denied – that is, when Plaintiff knows of the injury resulting from the failure to accommodate.  *See Harris*, 186 F.3d at 247 (ADA claim accrues when plaintiff "knew or had reason to know of the injury serving as the basis for his claim"); *Walton ex rel. Smith v. Fla. Dep't of Corr.*, No. 16-CV-1130, 2018 WL 1393520, at *5 (M.D. Fla. Mar. 20, 2018) ("[A]n ADA claim accrues when the plaintiff knows of an injury resulting from a failure to accommodate."), *on reconsideration in part*, 2019 WL 462844 (M.D. Fla. Feb. 6, 2019); *Ugactz v. United Parcel Serv., Inc.*, No. 10-CV-1247, 2013

WL 1232355, at *15 n.27 (E.D.N.Y. Mar. 26, 2013) ("Failure to accommodate claims accrue on the date when a request is denied.").

A failure-to-accommodate claim is not a "continuing violation" – that is, once a request for accommodation is made by the employee and denied by the employer, the claim has accrued and the 300-day clock for filing with the EEOC starts. *See Graham v. Women in Need, Inc.*, No. 13-CV-7063, 2014 WL 2440849, at *3 (S.D.N.Y. May 30, 2014). The rejection of a request to accommodate is a "'discrete act' that must be the subject of a complaint to the EEOC within 300 days." *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134-35 (2d Cir. 2003); *see Gomez v. N.Y. City Police Dep't*, 191 F. Supp. 3d 293, 302 (S.D.N.Y. 2016) (collecting cases). "'[T]he rejection of a proposed accommodation is a single completed action when taken'" even if "the *effect* of the employer's rejection continues to be felt by the employee for as long as he remains employed.'" *Gomez*, 191 F. Supp. 3d at 302 (emphasis in original) (quoting *Elmenayer*, 318 F.3d at 135); *O'Leary v. Town of Huntington*, No. 11-CV-3754, 2012 WL 3842567, at *8 (E.D.N.Y. Sept. 5, 2012) ("[A]n employee who continues working after the denial of a reasonable accommodation may not claim a continuing violation.").

Plaintiff filed his EEOC complaint on July 1, 2019. (ECF No. 264-10.) Thus, for his claim here to be timely, he must have asked for and been denied an accommodation on or after September 4, 2018. In the August 4, 2021 Opinion and Order in this case, construing the record favorably to Plaintiff, the Court found that there was a question of fact whether Plaintiff asked for accommodation on or about October 20, 2017. (ECF No. 201 at 57 & n.36.) The Court relied on the email exchange between Mr. Evans and Ms. Head, (ECF No. 154-33), Plaintiff's deposition testimony, (ECF No. 180-21 at 187:24-188:14), and Mr. Evans's November 30, 2020 affidavit, (ECF No. 154-6). By Plaintiff's account, he traveled multiple times thereafter,

beginning in November 2017, (P's 12/23/21 Decl. ¶ 21), and was "forced" by Teneo to do so, (*id.* ¶ 8; P's 56.1 Resp. ¶ 27; *see* ECF No. 172 ¶¶ 51, 98).  He thus would have known, as of the date of the first of those trips, that his request for accommodation had been denied,[17] and that would have been well outside the 300-day window.

On this motion, Plaintiff argues that he requested and was denied an accommodation a total of six times, three of which fall after September 4, 2018 and would be timely if properly supported.[18]  First, Plaintiff states that he requested an accommodation from Mr. Evans in a one-on-one conversation held over Skype on October 19, 2018.  (P's 12/23/21 Decl. ¶ 23.)  Ms. Gilani states that she witnessed Plaintiff make this request.  (S. Gilani Aff. ¶ 19.)  Second, Plaintiff states that on February 18, 2019, while he was in the United Kingdom on a work trip, he hand-delivered the Shifrin Note to Ms. Head and asked for an accommodation.  (P's 12/23/21 Decl. ¶ 25.)  Ms. Gilani states that Plaintiff told her about these events over the phone.  (S. Gilani Aff. ¶ 20.)  Finally, Plaintiff asserts that he requested an accommodation from Mr. Ayres on June 21, 2019, five days before his employment was terminated, in a voice message left on Skype.  (P's 12/23/21 Decl. ¶ 26.)  Ms. Gilani claims to have witnessed Plaintiff leaving this message.  (S. Gilani Aff. ¶ 21.)

---

[17] It is irrelevant for present purposes that Teneo – if the request for accommodation was made – should have started an interactive process to determine if a reasonable accommodation could be reached.  The failure to engage in the interactive process is not a violation of the ADA in itself, but can be evidence of a failure to accommodate.  *Sheng v. M&TBank Corp.*, 848 F.3d 78, 87 (2d Cir. 2017).  Here the failure to accommodate would have been evident the first time Plaintiff was required to travel after requesting not to.  It would also have been evident if, as Plaintiff claims, he told Evans on October 6, 2017 that he could not travel, and Evans told him he had to.  (P's 12/23/21 Decl. ¶ 18.)

[18] The Court need only address Plaintiff's evidence regarding the three potentially timely requests for accommodation.

Plaintiff submits no documentary evidence supporting these assertions, nor can he point to any supporting evidence in the record prior to this motion.  Rather, the statements in Plaintiff's and his wife's affidavits are the only evidence Plaintiff proffers to show timely requests for accommodation.

Although on summary judgment "a district court generally should not weigh evidence or assess the credibility of witnesses," *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (cleaned up), the "sham issue of fact" doctrine is an exception to that rule and "prohibits a party from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony," *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 205 (2d Cir. 2014) (cleaned up); *see Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."); *Perma Rsch. & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."). That is because "in certain cases a party's inconsistent and contradictory statements transcend credibility concerns and go to the heart of whether the party has raised *genuine* issues of material fact to be decided by a jury." *Rojas*, 660 F.3d at 106 (emphasis in original).  For the sham issue of fact doctrine to apply, the contradictions between deposition and affidavit must be "inescapable and unequivocal," *In re Fosamax Prods. Liab. Litig.*, 707 F.3d 189, 194 (2d Cir. 2013), and the issues must have been "thoroughly [and] clearly explored" in the deposition, *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 758 F.3d 202, 213 (2d Cir. 2014).

The sham issue of fact doctrine "has primarily been applied where a party submits sworn testimony that contradicts the party's own prior statements, [but] it may also apply where a party submits contradictory evidence from non-party witnesses to defeat summary judgment." *Walker v. Carter*, 210 F. Supp. 3d 487, 502-03 (S.D.N.Y. 2016). "Application of this doctrine to non-parties may be particularly appropriate where the non-party has 'a familial or other close relationship with the plaintiff that suggests [the plaintiff] could influence [the non-party's] testimony.'" *Id.* (alterations in original) (quoting *Moll*, 760 F.3d at 205 (court not required to apply sham affidavit doctrine where party proffers contradictory evidence from third party who is not family member, close associate, or retained expert)).

As a threshold matter, Plaintiff's claimed request for accommodation to Brett Ayres on June 21, 2019 does nothing to aid his case because Plaintiff does not assert that Teneo asked him to travel after that date. (*See* P's 12/23/21 Decl. ¶ 26.) Thus, even if the Court were to credit this assertion, it is irrelevant because Plaintiff was out on sick leave from June 21, 2019 until June 26, 2019, when he was fired, and there is no evidence that Teneo asked Plaintiff to travel between those dates.

With regard to the purported October 19, 2018 request for accommodation made to Steve Evans, Plaintiff's deposition testimony was as follows:

Q:  So when you went to UK that was for work an internal Teneo meeting?[19]
A:  Yes.  Yes.
Q:  Did you ask to be excused from that?
A:  No.
Q:  Other than that, in those six months [starting in January 2019], when did you travel?
A:  I don't remember, to be honest with you.  But let me come back to you.  I don't remember.
Q:  During that six months did you ever ask Steve Evans, if you could not travel?

---

[19] The UK trip was in February 2019.  (P's 12/23/21 Decl. ¶ 25; ECF No. 289-26.)

> A: *I only asked Steve Evans right after my herniation disc that if you can modify the travel*.  Never heard from him at that time so I managed.

(ECF No. 264-2 at 189:2-22) (emphasis added).  He also testified that when he asked Mr. Evans for an accommodation right after the injury, he did not hear back and thus decided to "manage his pain":

> Q: Did you have a request that you not have to travel after your injury?
> A: Yes, I told Steve Evans one to one, right after the – Because what happened was when I had an injury second day I had to travel to France.  So I came in the evening, a day after I went to New York, Kennedy and then I came back home to get clothing change, passport, went back to Kennedy.  And then went to France and then I had to work for two nights for Schneider Electric.  I reported to Steve.  I said, Steve, [c]an you basically do some accommodation, but he never came back.  So I didn't.  I managed my pain because I had to work.

(*Id.* at 187:24-188:12.)  Nowhere in Plaintiff's testimony does he refer to or suggest any 2018 conversation with Mr. Evans regarding a travel accommodation, or otherwise disclaim his testimony that he spoke to Evans about his injury only shortly after it occurred.[20]  Plaintiff points

---

[20] As noted, (*see* note 7 above), Plaintiff's March 12, 2021 Declaration references "remind[ing] Steve Evans for the request of Disability Accommodation in 1:1," (P's 3/12/21 Decl. ¶ 99), which could refer to the conversation at the Riverbed Disrupt event on November 2, 2017.  The declaration states that he met Steve Evans in person at Riverbed Disrupt; that Evans noticed that Plaintiff was holding his leg straight, had trouble sitting down, and appeared to be in pain; that Evans asked Plaintiff how he was doing; and that Plaintiff said he was in pain and "notified Steve Evans that I am request[ing] Disability Accommodations." (*Id.*)  The declaration further states that he "again reminded Steve Evans for the request of Disability Accommodation in 1:1." (*Id.*)  It appears that Plaintiff may be saying that the "1:1" also occurred at Riverbed Disrupt, just not at the moment and setting in which Evans observed Plaintiff having trouble sitting down.  Elsewhere Plaintiff implies that the "1:1" occurred on October 20, 2017.  Mr. Evans's October 20, 2017 email refers to a conversation with Plaintiff apparently on that day (in which Plaintiff said he would continue to work despite his back pain), and a conversation earlier in the week (during which Plaintiff informed Evans that his MRI showed three herniated discs). (ECF No. 264-4.)  Plaintiff's Local Rule 56.1 Response quotes this email and adds "[1:1]" in brackets where Mr. Evans refers to the phone call he and Plaintiff had on or around October 20, 2017. (P's 56.1 Resp. ¶ 7.)  Thus, it could be that the "1:1" to which Plaintiff refers in his declaration was the call with Mr. Evans, on October 20, 2017.  In any event, any inconsistency in Plaintiff's accounts of his conversations with Evans in 2017 does not suggest he made any accommodation request in 2018.

to his testimony that "[t]here are multiple events, which he asked me over and over again, which I refused," (ECF No. 264-6 at 199:1-2),[21] as evidence that he made repeated requests to Mr. Evans regarding a travel accommodation.  But that statement refers to requests by Mr. Evans that Plaintiff refused, so it cannot relate to accommodation requests by Plaintiff that Mr. Evans refused.  This reading is confirmed by that fact that the statement was immediately followed by the clarification that:  "There were multiple times Steve [came] back to me.  He didn't give me the accommodation when I asked him." (*Id.* at 199:5-8.)  It is plain from the context that Plaintiff was saying that Steve Evans asked Plaintiff to travel multiple times after denying his accommodation request in the fall of 2017, not that Plaintiff made multiple accommodation requests.  That evidence merely shows that his accommodation request had been denied and that that denial had a continuing effect.[22]

Plaintiff's deposition testimony likewise clearly contradicts his assertion on this motion that he hand-delivered the Shifrin Note to Ms. Head and asked her for an accommodation on February 18, 2019.  Plaintiff stated clearly at his deposition that that he never gave any work restriction note or other documentation to his employer:

---

[21] Plaintiff made this statement in response a question from Teneo's counsel regarding the timeline of Plaintiff's back injury and subsequent medical appointments:  "So I just want to clarify again the time line.  You hurt your back in September 2017.  You went to an appointment on November 3rd, 2017, and another appointment on November 27, 2017?"  (ECF No. 180-21 at 198:21-25.)  Teneo's counsel noted that Plaintiff's answer was not responsive to the question he had asked.  (*Id.* at 199:9-12.)

[22] The Court notes that Plaintiff's account of these accommodation requests has already changed since he filed his opposition brief to Teneo's motion to amend on October 4, 2021.  In that brief, Plaintiff misquotes his own testimony as stating "I asked for the accommodation, Multiple times he came back to me and did not give me the accommodation," and represented that he had asked Mr. Evans for an accommodation "[i]n December of 2018, [when] Evans visited New York," and again "in 2019."  (ECF No. 217 at 2.)  Neither of these purported accommodation requests are referenced in the affidavits submitted in opposition to this motion.

Q:  Did you ever provide Teneo with a doctor's note saying you were limited from lifting.
A:  No. I was not provided.  No, I didn't.
Q:  Why not?
A:  Because I didn't, I didn't feel like it, because the fact that I should have. Yeah, I didn't provide it.  Why not?  What can I say?  I didn't provide it.  I should have.  But I did tell Steve Evans.  And Teneo knew.  And I told Rachel Head as well.

(*Id.* at 157:18-158:3.)[23]

Q:  In December of 2017 we had the A&O install, which you went to and you testified you didn't ask to be excused from.  After that did you provide additional, or any medical documentation confirming your injury or a doctor's note excusing you from lifting or traveling?
A:  What I said to you –
Q:  No.  It's a yes or no question.
A:  I'm responding to you.  So let me respond.
Q:  But it's either yes or no.
A:  No.  I did not provide that, no.

(ECF No. 180-21 at 161:10-22.)

Q:  The question is between November 3rd, 2017, and June 21st, 2019, you never asked for and never received any doctor's note limiting your work responsibilities; is that correct?
A:  That's correct.

(ECF No. 264-6 at 185:23-186:2.)

The Court finds that these clear contradictions between Plaintiff's and Ms. Gilani's current affidavits on the one hand, and his deposition testimony on the other, compel the conclusion that the affidavits are an attempt to manufacture an issue of fact to survive summary judgment.[24]  The Court will not countenance that effort, and rejects those portions of Plaintiff's

---

[23] This statement that he "told Rachel Head" is clearly in the context of his initial discussion with his employer of his injury, which is reflected in the October 20, 2017 email in which Rachel Head says she spoke with Plaintiff about his MRI results.  (ECF No. 264-4.)

[24] The relevant paragraphs in Ms. Gilani's affidavit are reproduced almost word-for-word in Plaintiff's declaration.  (*Compare* S. Gilani Aff. ¶¶ 19- 21, *with* P's 12/23/21 Decl. ¶¶ 23-26). Indeed, there are numerous instances in Plaintiff's declaration where he refers to himself in the

and Ms. Gilani's affidavits that attest to requests for accommodation on October 19, 2018 and February 18, 2019. *See Moll*, 760 F.3d at 205; *Walker*, 210 F. Supp. 3d at 502-03.[25]  The June 2019 accommodation request is also inconsistent with the above testimony, and even if it was not, it is not grounds for a failure-to-accommodate claim for the reasons already explained.[26]

Even if the Court were to accept at face value Plaintiff's and Ms. Gilani's affidavits, Plaintiff's failure-to-accommodate claim would still be untimely because "mere requests to reconsider cannot extend limitations periods applicable to the ADA." *Krachenfels v. N. Shore Long Island Jewish Health Sys.*, No. 13-CV-243, 2014 WL 3867560, at *9 n.7 (E.D.N.Y. July 29, 2014) (cleaned up); *see Del. State Coll. v. Ricks*, 449 U.S. 250, 261 (1980) ("[L]imitations periods normally commence when the employer's decision is made."); *id.* at 261 n.15 ("Mere requests to reconsider, however, cannot extend the limitations periods applicable to the civil rights laws.").  While Teneo did not make this argument, this principle provides an independent reason why all of Plaintiff's requests for accommodation after the first such request that Teneo denied are irrelevant to the timeliness of his claim even if they did occur.  A "plaintiff's repeated requests for the same accommodation do not change the fact that he filed his EEOC claim more than 300 days after he [first] received notice . . . of [his employer's] denial of his requested accommodation." *Whalen v. CSC TKR, LLC*, No. 11-CV-1834, 2011 WL 6965740, at *3-4

---

third person or refers to "my husband." (*See, e.g.,* P's 12/23/21 Decl. ¶¶ 17, 25, 27-32.)  It is thus abundantly clear that the same person prepared both affidavits.  Moreover, as Plaintiff's wife, Ms. Gilani clearly has the sort of "familial or other close relationship with the plaintiff that suggests [the plaintiff] could influence [the non-party's] testimony." *Moll*, 760 F.3d at 205. Thus, the Court declines to rely on the statements in her affidavit that contradict Plaintiff's testimony.

[25] Unfortunately, this conduct does not appear to be out of character for Plaintiff.  (*See* ECF Nos. 306, 308-310; note 9 above.)

[26] The Court has already ruled that Plaintiff's termination was not retaliatory.  (ECF No. 201 at 31-35.)

(S.D.N.Y. Dec. 28, 2011) (holding that the "plaintiff's ADA claim accrued in 2003, when [his employer] first denied his request for a different work venue" and because "plaintiff filed his EEOC [charge] more than 300 days after he received notice of [his employer's] alleged discriminatory action, plaintiff's ADA claim is time barred").

Thus, there is no genuine factual dispute that Plaintiff's July 1, 2019 EEOC filing was made more than 300 days after his request for accommodation was denied. His travel after Teneo denied his request for accommodation is (at most) the continuing "effect" of that denial and is immaterial to the time bar. *Gomez*, 191 F. Supp. 3d at 302; *see Elmenayer*, 318 F.3d at 134-35. Accordingly, Plaintiff's failure-to-accommodate claim is untimely under the ADA and must be dismissed. *See* 42 U.S.C. § 2000e-5(e)(1).[27]

### B.    Plaintiff's Remaining Arguments

First, Plaintiff argues that the Court should deny Teneo's motion because its notice under Local Rule 56.2 was initially defective. (P's Opp. at 2.) This argument borders on frivolous, particularly in light of the Court's prior ruling rejecting a similar claim as the basis for reconsideration of its August 4, 2021 Opinion and Order. (*See* ECF No. 273.) In this instance, the Court raised Teneo's failure to attach a copy of Federal Rule of Civil Procedure 56 and Local Rule 56.1 to its notice, and Teneo rectified the defect (albeit first attaching a Local Rule from the wrong judicial district) the same day it filed its motion. (*See* ECF Nos. 267-270.) While the Court does not condone Teneo's repeated failure to comply with the Local Rule, Plaintiff got the proper notice the same day he got the improper notices, had his full period to file his opposition

---

[27] Because I find that Plaintiff's failure-to-accommodate claim is time-barred under the ADA, I need not address the parties' arguments regarding the duration or nature of Plaintiff's disability or the time period in which Teneo was obligated to accommodate his disability. (*See* ECF No. 265 at 9-18; P's Opp. at 18-23).

papers, and did in fact file a Local Rule 56.1 statement.  (*See* P's 56.1 Resp.)  In other words,

Plaintiff was not prejudiced in the slightest, and the error is not grounds to deny Teneo's motion.

Second, the Court will not grant Plaintiff the opportunity to make supplemental

submissions under Rule 56(e)(1), nor will it reopen discovery under Rule 56(d)(2).  (*See* P's

Opp. at 2, 23.)  Plaintiff has had more than ample time to locate whatever support there might be

for his assertions, and he has been on notice that the timeliness of his EEOC filing was a key

factual issue since at least August 19, 2021, when Teneo first raised its request to amend its

answer.  (*See* ECF No. 209.)  Nor has Plaintiff submitted the declaration required under Rule

56(d) or made any effort to meet that Rule's requirement that he specify what additional facts he

might seek, why they are essential to his opposition, or why he was unable to obtain them

already.  *See Amadasu v. Ngati*, No. 05-CV-2585, 2011 WL 3625146, at *2 (E.D.N.Y. Aug. 12,

2011).

Third, the Court declines Plaintiff's invitation to find that his supervisors are liable under

the ADA.  (*See* P's Opp. at 2-3.)  As Plaintiff acknowledges, binding authority in this Circuit

holds otherwise.  *See, e.g.*, *Corr v. MTA Long Island Bus*, 199 F.3d 1321 (2d Cir. 1999)

("[T]here is no right of recovery against individual defendants under the ADA.")  In light of this

precedent, the Court rejects Plaintiff's conclusory argument that the "plain language of the

statute" mandates supervisor liability under the ADA, and construes his federal claim as only

against the employer entities.[28]

---

[28] Teneo moves only as Teneo, Inc. and explains that Teneo USA, Inc., also named as a
Defendant, is not a legal entity but is a fictitious trade name used for the purposes of doing
business in New York.  (*See* ECF No. 301 at 2 n.1; ECF No. 60-1.)  Plaintiff does not appear to
dispute this.  While it is unclear whether Plaintiff intended to state a federal claim against Teneo
USA, Inc., to the extent he did the outcome is the same as the outcome of his ADA claim against
Teneo, Inc.

Finally, the parties dispute whether Plaintiff pleaded a state law failure-to-accommodate claim. In his opposition brief, Plaintiff asserts that his claim is "under the ADA and under NYCHRL." (P's Opp. at 1.) Granting the requisite special solicitude, the Court construes the argument here to mean that Plaintiff believes he stated a claim under the NYCHRL and NYSHRL. (*See, e.g.*, ECF No. 212 at 1-3.)[29] But even granting solicitude, the Court does not think that Plaintiff's Second Amended Complaint stated a claim for failure to accommodate under the NYSHRL. Plaintiff's Seventh Cause of Action, uses the word "disability" only once – in the heading: "SEVENTH CAUSE OF ACTION: (Discrimination Because of National Origin, Religion, Retaliation, Disability, Den[y]ing of Promotion, Hostile Work Environment and Age) New York City Human Rights Law, N.Y. City Admin. Code § 8-107 *et seq*." (SAC at 43.) The text of that count says nothing about disability discrimination, let alone a failure to accommodate. Paragraph 154 states that Teneo "violated the NYCHRL when it discriminated against [Plaintiff] in the terms and conditions of his employment and terminated hi[m] because of his *national origin, religion, and age*. . . . Defendant acted maliciously to interfere with [Plaintiff's] right to be free from discrimination based on national origin, religion, and age." (*Id.*) (emphasis added).

In any case, to the extent that Plaintiff's Second Amended Complaint could be read to state a failure-to-accommodate claim under New York state law, the Court would decline to exercise supplemental jurisdiction and would dismiss it without prejudice. The "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal law claims are eliminated before trial.

---

[29] Plaintiff has expressly disclaimed any intent to bring a claim under the NYCHRL, (ECF No. 171 at 20 n.1; *see* ECF No. 119 ¶ 2), so I need not further discuss any such claim.

*Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  Having determined that all of the claims over which this Court has original jurisdiction should be dismissed, and having considered the factors set forth in *Cohill*, the Court declines to exercise supplemental jurisdiction over any arguably remaining potential state law cause of action.  *See id.* (citing 28 U.S.C. § 1367(c)(3)).

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Teneo's motion for summary judgment is GRANTED.  Plaintiff's ADA failure-to-accommodate claim is dismissed with prejudice.  The final pre-trial conference previously scheduled for January 28, 2022, and the jury trial previously scheduled for February 15, 2022, are cancelled.  The Clerk of Court is respectfully asked to terminate the pending motion, (ECF No. 263), as well as the pending motions *in limine*, (ECF Nos. 225, 227), which are moot, and close the case.

**SO ORDERED.**

Dated: January 25, 2022
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.