```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2
    ---------------------------------x
 3  ASAD GILANI,

 4                          Plaintiff,

 5                                      20 CV 01785 (CS)
        -vs-
 6                                      BENCH RULING

 7  TENEO, INC., et al.,

 8                          Defendants.
    ---------------------------------x
 9
                                United States Courthouse
10                              White Plains, New York

11                              Tuesday, November 23, 2021
                                5:30 p.m.
12

13  B e f o r e:

14                              HONORABLE CATHY SEIBEL,
                                District Judge
15

16  A P P E A R A N C E S:

17
    ASAD GILANI, Pro Se Plaintiff
18

19  WRIGHT, CONSTABLE & SKEEN, LLP
        Attorneys for Defendants
20  BY:  MARC A. CHAMPSEN, ESQ.

21
    KLEIN, ZELMAN, ROTHERMEL, JACOBS & SCHESS, LLP
22      Attorneys for Defendants, Teneo, Inc.
    BY:  JANE B. JACOBS, ESQ.
23

24

25
```

 1          THE DEPUTY CLERK:  Good afternoon, Judge.

 2          Judge, this is the matter of Asad Gilani versus Teneo,

 3 Inc.  We have on the line the Plaintiff, Mr. Asad Gilani, and we

 4 have on, representing Defendants, Ms. Jane Jacobs and Mr. Marc

 5 Campsen.  Our court reporter, Tabitha, is on and Andy is on.

 6          THE COURT:  All right, good afternoon, everyone.  We

 7 have a few items to cover and it's late, so let's get right down

 8 to it.

 9          The first thing I want to deal with is Defendant's

10 motion to file an amended answer to the Second Amended

11 Complaint, which is ECF No. 215.  I'm not going to take the time

12 to recite the facts of the case; you all are familiar with them.

13 I will give a little background on the procedural history.

14          On July 1, 2019, Plaintiff filed a charge of

15 discrimination with the EEOC and, as relevant here, he alleged

16 in the charge "I was denied a reasonable accommodation for a

17 disability that the Respondent was aware of."  That's ECF No.

18 154-3 at page 1.

19          On February 28th, 2020, he filed his complaint in this

20 case and on March 4th his Amended Complaint.

21          On May 15th, we entered a discovery plan which set the

22 deadline to amend the pleadings on June 1st, 2020.  That's ECF

23 No. 24.

24          On June 1st, Plaintiff filed a motion for leave to

25 file a Second Amended Complaint, which was ECF No. 27.  In this

1  motion, he asked to add a claim for disability discrimination,

2  although he erroneously said it was a Title VII claim rather

3  than an ADA, or Americans With Disabilities Act, claim.

4          On September 22nd, the Court granted the Motion For

5  Leave to file the Second Amended Complaint, or SAC, in part, at

6  ECF No. 90.  Plaintiff filed it on September 25th at ECF No. 94,

7  and Defendants answered on October 19th, ECF No. 125.

8          On December 21st, Defendants filed a Motion For

9  Summary Judgment, No. 152.

10         On March 12th, Plaintiff filed a Declaration in

11 support of his summary judgment motion, No. 172.

12         On August 4th of this year, I granted the summary

13 judgment motion on all claims except for Plaintiff's

14 failure-to-accommodate for travel, in other words, the claim of

15 disability discrimination based on failure to accommodate for

16 travel, ECF No. 201.

17         On August 19th, Plaintiffs filed a letter requesting

18 leave to amend their Answer to include the affirmative defense

19 that the failure-to-accommodate claim under the ADA is

20 time-barred, which is ECF No. 209.  Plaintiff opposed at ECF No.

21 212.  I granted leave for the parties to brief the issue and the

22 instant motion followed.

23         The legal standard is well known.  Under Rule 15(a) of

24 the Rules of Civil Procedure, leave to amend is to be freely

25 given when justice so requires.  It's within the sound

1  discretion of the Court to grant or deny leave to amend. *Kim v.*

2  *Kimm,* 884 F.3d 98, 105.  Although liberally granted, leave to

3  amend may be denied for undue delay, bad faith or dilatory

4  motive, repeated failure to cure deficiencies by prior

5  amendments, undue prejudice, futility, et cetera. *Ruotolo v.*

6  *City of N.Y.*, 514 F.3d 184, 191.  "Mere delay, however, absent a

7  showing of bad faith or undue prejudice, does not provide a

8  basis for a district court to deny the right to amend." *Block*

9  *v. First Blood*, 988 F.2d 344, 350.  Where a motion is made after

10 inordinate delay, no satisfactory explanation is offered for the

11 delay, and the amendment would prejudice the other side, the

12 Court has discretion to deny leave to amend. *Cresswell v.*

13 *Sullivan & Cromwell*, 922 F.2d 60, 72.

14       Where, however, the Court sets a deadline for

15 amendments to the pleadings and the party moves to amend once

16 that deadline has passed, the Court has to balance the more

17 liberal standard of Rule 15(a) against the more stringent

18 requirements of Rule 16(b) under which a scheduling order may be

19 modified only for good cause. *See Holmes v. Grubman*, 568 F.3d

20 329, 34-35; *Grochowski v. Phoenix*, 318 F.3d 80, 86; and *Parker*

21 *v. Columbia Pictures,* 204 F.3d 326, 339.  Failure to consider

22 Rule 16(b) would render scheduling orders meaningless and read

23 Rule 16(b) and its good cause requirement out of the federal

24 rules. *Parker*, 340.  Whether good cause exists depends on the

25 diligence of the moving party. *Parker*, 340.  In other words,

1    the party must show that despite having exercised diligence, the

2    applicable deadline could not have been reasonably met.  *Sokol*

3    *Holdings v. BMD*, 2009 WL 2524611, at page 7, S.D. August 14th,

4    2009, report and recommendation adopted 2009 WL 3467756, October

5    28th, 2009.  A party fails to show good cause when the proposed

6    amendment rests on information that the party knew or should

7    have known in advance of the deadline.  *Oscar v. BMW,* 2011 WL

8    6399505, at page 2, S.D. December 20th, 2011.  The Court can

9    consider other factors including whether there would be

10   prejudice to the other side, *Augustine v. AXA*, 2008 WL 5025017,

11   at page 2, S.D. November 24th, 2008, but the absence of

12   prejudice does not alone fulfill the good cause requirement.

13          Here, the proposed amendment is limited to the

14   addition of the single affirmative defense, that the claim is

15   untimely.  The Defendants assert they satisfy the standard for

16   the amendment under both rules, and, for the reasons I'm about

17   to set forth, I agree.

18          The Defendants argue that none of Plaintiff's filings

19   before his March 12, 2021, declaration made clear when exactly

20   he asked for Defendant to accommodate his disability with regard

21   to travel.  They assert that because Plaintiff never articulated

22   a specific date or dates on which he asked for a travel

23   accommodation, and, indeed, claimed to have regular monthly

24   requests for accommodation, they were unable to determine that

25   they had a viable statute-of-limitations defense to Plaintiff's

1  failure-to-accommodate claim until summary judgment briefing was

2  already well underway.  Specifically, they say the

3  statute-of-limitations defense was not apparent until

4  Plaintiff's declaration of March 12th, 2021, was filed in which

5  Plaintiff appeared to be alleging that he asked for the

6  accommodations in 2017, but never heard back and was not

7  alleging that he continued to ask for and be denied the

8  accommodation.  This is all in Defendant's brief at page 12.

9        The March 12th, 2021, declaration, which is ECF No.

10 172, states in paragraph 99 that in October 2017, after

11 Plaintiff injured his back, he saw Steve Evans at an event

12 called Riverbed Disrupt in New York, at which he requested

13 disability accommodation and that he reminded Evans of that

14 after the meeting in a one-on-one meeting, but he never received

15 a response.  Hearing this, Defendants waited until I ruled on

16 the summary judgment motion and then reasonably promptly wrote

17 me seeking for leave to amend within a couple of weeks within

18 the summary judgment ruling.  Or maybe it's a tad longer.

19       Plaintiff points to Judge Davison's statement in his

20 opinion granting Plaintiff leave to file the SAC that the

21 disability discrimination claims are not new, see ECF 90 at page

22 5, but this statement related to whether Plaintiff should be

23 allowed to amend, and it did not support the contention that

24 Defendants knew or should have known that they had a viable

25 defense that the failure-to-accommodate claims were time-barred.

1   Judge Davison's comment would be relevant, for example, if

2   Defendants were contending that they did not know that Plaintiff

3   was asserting disability claims, but that is not their argument.

4   Rather, Defendants argue that the manner in which the

5   failure-to-accommodate claims were pleaded did not put them on

6   notice of the possible defense that the Plaintiff's final

7   accommodation request was not within 300 days of his EEOC

8   filing.

9              Plaintiff's EEOC charge alleges a denial of a lifting

10  accommodation in February 2019, but does not give a date or

11  dates on which Plaintiff sought the travel accommodation or even

12  mentioned that Plaintiff sought an accommodation for travel

13  specifically.  See ECF No. 154-3.  While the initial complaint

14  did indicate that Plaintiff wanted to bring a disability

15  discrimination claim in that Plaintiff checked the boxes

16  indicating that his claim was brought under the ADA and that one

17  basis for his claim was failure to accommodate his disability,

18  see ECF No. 1 at pages 3-4, it included no details related to

19  that claim and did not set out a count under the ADA.  Both the

20  First and Second Amended Complaints alleged that Plaintiff asked

21  his supervisor, Steve Evans, for an accommodation not to travel

22  every month in one-on-one meetings.  See ECF No. 3 at paragraph

23  18 and ECF No. 94 at paragraph 24.

24             Thus, it's clear, at least as late as the Second

25  Amended Complaint, Defendants would have had no reason to

1  include an affirmative defense that the failure-to-accommodate

2  claims were time-barred.  Even if the timeline might have become

3  discernible to Defendants at some point during discovery, I

4  cannot characterize their failure to raise this issue in the

5  midst of discovery or during summary judgment briefing as a lack

6  of diligence or undue delay, given that this case has been

7  characterized by voluminous and difficult-to-understand

8  submissions, extensive discovery disputes, and shifting

9  theories.  The mere fact that Defendants may have had access to

10 facts and testimony that would have allowed them to piece

11 together the timeline slightly earlier than they did is not

12 dispositive.  *See Affiliated FM Ins. v. Liberty*, 2013 WL

13 4526246, at page 5, S.D. August 27th, 2013, which pointed out

14 that Defendants don't have to prove they uncovered new facts or

15 law in order for the court to grant leave to amend.  Nor is the

16 delayed recognition of a potential defense inexcusable,

17 *Affiliated*, 5-6.  Pleading is not intended to be "a game of

18 skill in which one misstep by counsel may be decisive to the

19 outcome."  Rather, "the purpose of pleading is to facilitate a

20 proper decision on the merits."  Again, *Affiliated*, 6.

21        Plaintiff asserts Defendants are not acting in good

22 faith and are seeking to avoid trial, but as discussed,

23 Defendants present a valid and reasonable explanation for why

24 they are now raising this issue for the first time.  Moreover,

25 Defendants raised this issue with Plaintiff and sought to avoid

1 briefing on it by seeking his consent, and when he declined,

2 which was his right, they promptly raised the issue with the

3 Court, so nothing about the request or its timing reflects bad

4 faith or dilatory motive.

5          Plaintiff argues he will be prejudiced if I permit

6 Defendants to amend their claim because he will request

7 additional discovery, and if the amendment is permitted, it will

8 impact the trial timeline.

9          With regard to discovery, Plaintiff fails to explain

10 why he will need additional discovery, nor does he identify any

11 additional discovery he might need.  The issue of when Plaintiff

12 made his last request for an accommodation is extremely narrow.

13 As Defendants note, there has already been extensive document

14 discovery in this case, including communications between

15 Defendants and Plaintiff regarding his back injury, Plaintiff's

16 medical records, and communications with the EEOC related to the

17 discrimination claims.  Indeed, it appears that it is Plaintiff

18 that has been holding back documents relating to this issue, as

19 I'll get to in a moment when I talk about the motion to

20 reconsider.

21          Further, Plaintiff took depositions of the only two

22 individuals he has identified at Defendant's company with whom

23 he alleges he discussed his back injury, Steve Evans and Rachel

24 Head.  At Evan's October 27th, 2020, deposition, Plaintiff

25 referred to a single discussion in October 2017 with Evans

1  regarding his back injury and potential accommodations, but did

2  not ask Mr. Evans about or clearly allude to any other time when

3  he purports to have requested an accommodation not to travel.

4  See ECF No. 180-9, which is the Evans deposition, at page 72,

5  lines 14-17.  Mr. Evans also testified at his deposition that

6  Plaintiff never asked him not to travel.  That's at page 75,

7  lines 9-11.  Thus, Plaintiff has already deposed and explored

8  this topic with the individual with whom he alleged in the SAC

9  he regularly discussed his need for accommodation.  Plaintiff

10  did not question Ms. Head regarding his accommodation request.

11  Plaintiff certainly knew what he intended to allege and had

12  every opportunity to explore it before now.

13          Second, with regard to impact on the trial timeline,

14  Plaintiff likewise fails to explain how amendment will prejudice

15  him.  Permitting the amendment in and of itself will not impact

16  the timeline, and in any case, as Defendants point out,

17  Plaintiff was always required to establish the chronology of his

18  travel-accommodation discrimination claim to prove the request

19  was made and denied regardless of Defendant's position that it

20  is now untimely.  Finally, should Defendants request and be

21  permitted to make a renewed summary judgment motion regarding

22  the statute of limitations on this claim, it will be a simple

23  and discrete issue that can be briefed on a tight timeline and

24  addressed in advance of the trial, which, by the way, is going

25  to be on January 12th, 2022.

1           Finally, the requested amendment would not be futile.

2     The last date on which Plaintiff can prove he asked for and was

3     denied an accommodation will be crucial to whether his claim can

4     succeed because it's time-barred if he did not file with the

5     EEOC within 300 days of Teneo's denial of the request for

6     accommodation.  A failure-to-accommodate claim is not a

7     continuing violation.  That is, if Plaintiff only requested an

8     accommodation once, he cannot claim that every time he was asked

9     to travel thereafter was a violation that resets the

10    statute-of-limitations clock.  *See Graham v. Women In Need*,

11    *Inc.*, 2014 WL 2440849, at page 3, S.D. May 30th, 2014.  Rather,

12    the Second Circuit has concluded that the rejection of a request

13    to accommodate is a discrete act with its own statute of

14    limitations of 300 days for filing a complaint with the EEOC.

15    Same case at page 3.  Thus, whether the Defendants seek to renew

16    a motion for summary judgment or assert the defense at trial,

17    the timing issue is potentially dispositive, so it would be far

18    from futile to allow Defendants to amend their answer.

19           I note that Plaintiff asserts in his motion papers

20    that he asked Evans about an accommodation in 2018 and 2019, but

21    Evans refused.  He says that at page 2 of his Opposition.  For

22    this proposition, Plaintiff purports to quote his own deposition

23    from September 22nd, 2020, where he said "I asked for the

24    accommodation, multiple times he came back to me and did not

25    give me the accommodation."  The actual quote in his deposition

1   is "there were multiple times Steve came back to me.  He didn't

2   give me the accommodation when I asked him."  That's at ECF No.

3   180-21 at 199, lines 6-8.  That does not really say that

4   Plaintiff made multiple accommodation requests.  It says Steve

5   made multiple requests to travel.  Elsewhere, Plaintiff clearly

6   testifies that he only asked Evans for a travel accommodation

7   once in 2017.  "I only asked Steve Evans right after my

8   herniation disk that if you can modify the travel.  Never heard

9   from him at the time, so I managed."  That's in Mr. Gilani's

10  deposition at page 189, lines 19-22.  To the extent there is a

11  legitimate dispute on the timeline, the parties will have the

12  opportunity to make those arguments, whether in motion practice

13  or at trial, but at this stage, Plaintiff's assertion that he

14  asked in 2018 and 2019 is not grounds to deny Defendant's motion

15  to amend, particularly where it contradicts the deposition.

16          Finally, in addition to the arguments discussed above,

17  Plaintiff makes a number of additional attempts attempting to

18  re-litigate several issues not before the Court on this motion.

19  He sets forth dates on which Evans allegedly asked him to lift

20  equipment or that the company "forced" him to travel after his

21  back injury.  His arguments regarding lifting are irrelevant at

22  this stage.  Only his failure-to-accommodate claim regarding

23  travel survives summary judgment.  Next, he discusses Dr.

24  Shifrin's testimony at deposition and submits previously

25  un-submitted medical records, making arguments that he is

 1  disabled for purposes of the ADA, but none of the medical

 2  evidence or related arguments are relevant to the topic of when

 3  Plaintiff asked for a travel accommodation, much less relevant

 4  to when Defendants knew or should have known they had a viable

 5  statute-of-limitations defense.

 6          So the motion to amend the answer is granted.  The

 7  Clerk should terminate the motion at ECF No. 215.

 8          Mr. Campsen, can you file the amended answer by the

 9  end the week?

10          MR. CAMPSEN:  Yes, your Honor.  I'll file it tomorrow.

11          THE COURT:  All right, amended answer due 11/24/21.

12          And is it your desire to file a new Motion For Summary

13  Judgment?

14          MR. CAMPSEN:  Yes, your Honor.

15          THE COURT:  Then we're going to have to do that on a

16  tight schedule.  I know you're on trial, but you've got

17  co-counsel.  What do you propose?

18          MR. CAMPSEN:  I could file it on December 3rd?

19          THE COURT:  Uh...

20          MR. CAMPSEN:  Or earlier if the Court requires.

21          THE COURT:  When's your trial going to be over?

22          MR. CAMPSEN:  I think it's going to be done on Monday.

23  I think we're closing evidence tomorrow, we'll come in on Monday

24  morning for jury instructions and deliberation, and hopefully it

25  will be done Monday.  Night.

```
 1            THE COURT:  All right.  If you file the motion
 2   December 3rd, then I'll give Plaintiff till December 13th for
 3   his opposition, and I'm going to give you a very tight
 4   turnaround for a reply, December 16th.
 5            MR. GILANI:  I have a question, Judge.
 6            THE COURT:  Yes, Mr. Gilani.
 7            MR. GILANI:  Why are we filing summary judgment again?
 8            THE COURT:  Why is the Defendant filing summary
 9   judgment again?  Because --
10            MR. GILANI:  Yeah.
11            THE COURT:  -- they've amended their answer and it's
12   potentially dispositive.
13            MR. GILANI:  Okay, so then I will file cross-summary
14   judgment as well.
15            THE COURT:  On what grounds?
16            MR. GILANI:  On the same grounds.  It's the same
17   grounds --
18            THE COURT:  You're -- that's not going to be
19   permitted, and I'll tell you why.
20            MR. GILANI:  No, no, hold on, hold on.
21            THE COURT:  No, you gotta let me finish.
22            MR. GILANI:  Okay, sorry.
23            THE COURT:  The grounds on which they are moving for
24   summary judgment is that your claim is time-barred.  If they're
25   right, then the claim gets thrown out, but if they're wrong,
```

1  then the claim survives.  It means it goes on to trial.  It

2  doesn't mean you automatically win.  The issue is simply is it

3  time-barred, and that's a yes or no that's going to be answered

4  on their motion, can they show that it's time-barred.  If they

5  can't, then you have to prove the claim at trial.

6          But there's no such thing as a motion for summary

7  judgment to establish that the claim is not time-barred, so

8  there's nothing for you to move on right now.  If they can't

9  show that it's time-barred, then we'll go to trial and you have

10  to prove it at trial, but on the narrow issue of there being a

11  time-bar, there's no such thing as a plaintiff making a motion

12  asking for summary judgment on the issue of his claim not being

13  time-barred.  If they can't prove it's time-barred, you're going

14  ahead with it at trial.

15          MR. GILANI:  No, no, that --

16          THE COURT:  There's no need for a cross-motion.

17          And they're only going to be allowed to move on this

18  very narrow issue as to the timing.  We're not opening up the

19  whole can of worms that was previously opened up, only on this

20  one new issue, and I -- go ahead.

21          MR. GILANI:  So basically you said on summary judgment

22  that they were not aware of my lifting restriction, but they

23  were aware of the lifting restriction, and I requested that, I

24  think it was on September 9th reply to you, that that should be

25  considered, because it was wrong, right?

1          So the lifting restriction, you mentioned that they

2  were not, they were not aware.  They were aware of the lifting

3  restriction and accommodation restriction, so I would like to

4  file in cross-summary judgment the lifting restriction as well.

5          THE COURT:  Well, that sounds more like you want to

6  make a motion for reconsideration.

7          The only motion -- the only renewed motion for summary

8  judgment we're going to have is related to the single issue on

9  which I've allowed the amendment.  I'm going to talk about the

10  motion for reconsideration in a minute.

11          MR. GILANI:  Okay.  That's fine.

12          THE COURT:  But let me just make a couple of things

13  clear.

14          First of all, because we do have the trial coming up

15  and I'm going to have to decide this motion on a very compressed

16  time frame, there are going to be no extensions of time, so --

17  you each basically know what the other one's going to say, so

18  you can start preparing ahead of time, Mr. Gilani, because I'm

19  not going to give you an extension, number one, so you know what

20  their argument's going to be, you can start thinking about your

21  opposition, and you can start putting your exhibits together.

22          I want to make sure that your exhibits are not handled

23  the way they were last time because I have to say it was a total

24  nightmare and scores of hours were wasted in my chambers trying

25  to figure out your exhibits, so what you're going to do in your

1  opposition for this motion is, first of all, any exhibits that

2  you're going to use you're going to number.  Starting with 1,

3  the first one is going to be P-1, the second one is going to be

4  P-2, the third one is going to be P-3, for however many exhibits

5  you have.

6          MR. GILANI:  Got it.

7          THE COURT:  No -- nothing else, P-1 through P-1000.

8  And you're going to give me those exhibits in chronological

9  order, and they're going to be separated by tabs and the tabs

10 are going to say P-1 and P-2 on them.

11          You're not going to refer to other exhibits that are

12 previously on the docket.  Anything you want me to consider you

13 gotta give me new again.

14          MR. GILANI:  Okay.

15          THE COURT:  Because it's too hard to find your

16 exhibits because of the numbering system that you used, so P-1

17 through P-Whatever, in order, no other numbering system, no

18 reference to previously-filed documents.

19          And Defendants are going to file a Rule 56.1

20 statement, and you're going to respond -- you have to respond to

21 it paragraph by paragraph, so for each paragraph, you're going

22 to set out what they say and then your response underneath it

23 with the -- with a reference to whatever exhibits, whether it's

24 P-1 or P-53 or any combination of exhibits that you want me to

25 look at, so you're going to answer each paragraph of the 56.1

1  statement paragraph by paragraph, referring to evidence.

2          And you cannot do what you seem to have done in

3  connection with the motion for reconsideration, which is come up

4  with new exhibits that apparently were not produced before.

5          Mr. Campsen, am I right that some things that were

6  produced by Mr. Gilani since the summary judgment motion were

7  not produced before?

8          MR. CAMPSEN:  Yes, your Honor, across several motions.

9          THE COURT:  Yeah.  So anything that you haven't

10 produced to the other side you can't use, Mr. Gilani.  You can't

11 hold things back and spring them.  That's not allowed.  If

12 something was requested or something you were going to use and

13 you didn't initially disclose it, you have to supplement your

14 disclosure.

15         So I'm going to set a hard deadline, a drop-dead

16 deadline.  Uh, let's see, today is Tuesday, the 23rd.  Any

17 document you haven't turned over by Friday the 26th cannot be

18 used in this case.  I don't care if it's the smoking gun that

19 proves they owe you a bazillion dollars.  If you haven't turned

20 it over by Friday, it's like it doesn't exist.

21         MR. GILANI:  Got it, got it.  Thank you.

22         THE COURT:  So if there's anything more that you're

23 sitting on, give it to them by Friday.

24         MR. GILANI:  So quick question.  Should I give it to

25 them or should I send it to the Court?

1              THE COURT:  No, I don't want it.  Give it to them.

2              MR. GILANI:  Okay.  Okay, thank you.

3              THE COURT:  All right.

4              So as I mentioned, we do have a courtroom.  We don't

5    have a space to pick the jury, however, on the 10th, we have it

6    on the 12th, so we will pick the jury on the 12th and then go

7    right into the trial, so I need to set a date for a final

8    pre-trial conference for me to rule on the motions in limine and

9    take care of any last-minute issues, so let me ask Mr. Clark to

10   look around for maybe a week or so before, some time during the

11   week of the 3rd.  While he's doing that, I want to talk about

12   the motion to reconsider.

13             As is well known, motions to reconsider are submitted

14   to my sound discretion.  The standard for granting such a motion

15   is strict.  Reconsideration is generally going to be denied

16   unless the moving party can point to controlling decisions or

17   data that the Court overlooked, in other words, matters that

18   might reasonably be expected to change the conclusion reached by

19   the Court.  *Schrader v. CSX*, 70 F.3d 255, 257.  The recognized

20   grounds for granting a motion are in intervening, changing, and

21   controlling law, the availability of new evidence, or the need

22   to correct clear error or prevent manifest injustice.  *Kopperl

23   v. Bain*, 2014 WL 1796649, at page 1, D. Conn. May 6th, 2014.

24   New evidence means evidence that was evidence that could not

25   have previously been found by the exercise of due diligence.

1  *Pablo Star v. Welsh Gov't*, 2016 WL 2745849, at page 1, S.D., May

2  7th, 2016.

3            Defendant's motion is based on Dr. Shifrin's

4  deposition in which Dr. Shifrin said his order of no travel

5  essentially expired on November 27th, 2017, and then Defendants

6  argue there's no evidence that Plaintiff traveled any time

7  between October 10th, when the conversation with Mr. Ayers

8  allegedly occurred, and mid-December 2017, and there's no

9  evidence that Plaintiff requested an accommodation before

10 October 10th.  Actually, I think October 10th is the date of the

11 trip.  In other words, the Defendant's argument is, I think, and

12 I'll understand it better after the motion, is that Plaintiff

13 was only disabled until November 27th and he never asked not to

14 take the one trip he conclusively established had occurred

15 before that date.

16            Defendant also points to Dr. Shifrin's testimony that

17 the limitation did not include sitting, which we found was one

18 of the major life activities impaired by the injury or that a

19 jury could so find.  We sort of extrapolated sitting from the

20 travel restrictions in an attempt to identify what exactly about

21 the travel was difficult for Plaintiff due to his injury because

22 he didn't really make it clear.

23            In response, Plaintiff offers previously-undisclosed

24 evidence documenting trips he took between September and

25 December 2017 and evidence of medical appointments in October

1  2017, none of which was before me on the motion and none of

2  which apparently was ever turned over to the Defense.  That's

3  not new evidence at all.  As I said a moment ago, new evidence

4  is something that either came into existence after the motion or

5  could not have been located before the motion.  Obviously

6  Plaintiff had all these things.

7          So -- well, with respect to Defendant's motion, I

8  think the best thing to do is...maybe I will expand on what I

9  said before and let -- in light of the newly-revealed

10  information not only from Dr. Shifrin, but from the Plaintiff, I

11  think what makes the most sense is rather than reconsider the

12  previous motion without having -- based on what I have in front

13  of me, I think I'm going to modify what I said a moment ago and

14  I will let the Defendant include in the motion the arguments

15  that it would have raised on reconsideration, which I gather are

16  going to relate to whether the Defendant was really disabled or

17  -- well, actually, I shouldn't say that.  I don't know what the

18  arguments are going to be.  But they can raise the

19  statute-of-limitations issue and arguments based on the new

20  information, both from Shifrin and from Plaintiff, if that's

21  helpful to them.  If it's not, they obviously don't need to.

22          With respect to Plaintiff's motion to reconsider, as I

23  said a moment ago, new evidence is not evidence that Plaintiff

24  had all along, but never presented, it's only new evidence if it

25  didn't previously exist or couldn't have been located, so the

1  new information that Plaintiff provided is not grounds for a...a

2  motion to reconsider.  And I have to say that the remaining

3  arguments in favor -- that Plaintiff lays out for

4  reconsideration, I really was -- had a very hard time

5  understanding.

6          The Plaintiff says that we made an error in -- that I

7  made an error in saying that Evans was not aware of any lifting

8  restrictions on Plaintiff's part.  I think what I said is that

9  Teneo was not on notice regarding the lifting limitation on

10 December 3rd, 2017, because Plaintiff testified that he never

11 asked to be excused from that.  I don't think I ever explicitly

12 said that Evans never knew about the lifting problem, I just

13 said that Plaintiff hadn't established that it was still in

14 effect on December 3rd, but to whatever extent there might be an

15 isolated incident of something that happened on December 3rd,

16 2017, I don't regard it as grounds to reconsider and I'm not

17 sure it's timely, either, but I didn't -- I wasn't able to

18 follow any argument that --

19          MR. GILANI:  So -- I, I --

20          THE COURT:  -- regarding those things.

21          And Plaintiff also said that we -- that I ignored a

22 series of documents which I didn't ignore, I cited them

23 extensively, so to the extent the motion to reconsider is

24 supported by documents that weren't before me and could have

25 been or wouldn't alter the outcome or are general and

1 conclusory, which is basically the whole thing, that application

2 is denied.

3           MR. GILANI:  So I have a question.  I just want to

4 correct something.

5           You mentioned in opinion, page 55 --

6           THE COURT:  Hold on one second.  Let me pull it up so

7 I can follow with you.  Just give me one second.

8           (Brief pause)

9           THE COURT:  At page 55?

10           MR. GILANI:  Page 55.

11           THE COURT:  All right, hold on.

12           (Brief pause)

13           THE COURT:  All right, where on page 55?

14           MR. GILANI:  So on top of the page...

15           THE COURT:  Yep.

16           MR. GILANI:  Defendants argue that Plaintiff could not

17 be disabled with regards to travel, alternatively that he needed

18 no accommodation because of this, he did, in fact, travel,

19 document 152, at 25-26, but Plaintiff is not required to show

20 that travel was impossible.  You mentioned *Parada* 753.  His

21 testimony regarding his difficulty sitting and incontinence by

22 his injury, both of which were exaggerated, according to him, by

23 travel.

24           Now, I -- that is not my testimony and I never had a

25 restriction on sitting, so that was inaccurately {sic}, and then

1  you mentioned right after that -- right after that you mentioned

2  that -- by sitting, so that is inaccurate.

3              THE COURT:  All right, well, then, at trial you won't

4  be arguing that -- look, what I was trying to do, because I

5  found it very hard to follow your argument and I was bending

6  over backwards to give you the benefit of the doubt in

7  everything, I thought maybe since you were talking about flying

8  that sitting was a problem, but if sitting wasn't the problem,

9  then at trial, you won't prove up anything related to sitting.

10 That's fine.

11             MR. GILANI:  Okay.  That's fine, thank you.

12             THE COURT:  Okay.  You're certainly not obligated to.

13             Now, the other thing I wanted to address, just because

14 it's going to affect Mr. Campsen's planning, is his letter of

15 October 15th in which he requests that Ms. Head and Mr. Ayers

16 testify remotely.  I don't think I received any opposition from

17 Plaintiff.

18             Do you oppose that application, Mr. Gilani?

19             MR. GILANI:  Yes, I do.  They should be in the court.

20 The jury is going to be in the court.  The jury has to see them.

21 If they want to testify.  Otherwise, we have their depositions,

22 so they don't need to testify as a witness, you know.

23             THE COURT:  Well, I'm -- I know we -- we're not quite

24 in agreement as to whether or not they're parties.

25             MR. GILANI:  Yeah, but they are --

1          THE COURT:  They were in the caption, but they weren't

2  named in any particular count.

3          MR. GILANI:  But they should be there.  You know,

4  basically if the jury is going to be there, your Honor, you're

5  going to be there, and the Court has to see what is the reaction

6  of everybody, right?  So when the questions are going to be

7  asked and witnesses are going to testify, it's unfair to the

8  jury.  We bring them in, we have them sit down and not have them

9  seeing the reaction of what's happening, why -- what would come

10 out, I mean, it's unfair to the jury.  And it's all whoever

11 wants to testify, wants to testify, they should be there on the

12 court.  As a witness or anybody.

13         I mean, I might have people who live in Austin, Texas;

14 Raleigh, North Carolina; Charlotte.  Can they be testifying?

15 And then I have somebody else from UK and (inaudible).  Can they

16 testify remotely?  It's unfair to the jury.

17         THE COURT:  Well, you know, none of those people have

18 to come if they don't want to because they're more than 100

19 miles from the Court, but if they're willing to come, great.

20         I'm a little puzzled, Mr. Campsen, because Ms. Head

21 and Mr. Ayers work for the company.  Why wouldn't they come?  I

22 mean, there's travel freely back and forth between the UK and

23 the U.S. right now.  If something changed COVID-wise, you know,

24 that, that might be relevant, but, you know, why should I find

25 good cause -- you know, what you have to find under Rule 43(a)

Bench Ruling                Gilani v. Teneo

```
 1  in order to permit testimony in open court by contemporaneous
 2  transmission from a different location is good cause and
 3  compelling circumstances.
 4          What's the good cause?
 5          MR. CAMPSEN:  Well, here they're located in the UK,
 6  they're not parties anymore, but they're crucial to this matter,
 7  and I don't even know if they're vaccinated, I guess we'd have
 8  to get into their medical issues to see if they can travel, and
 9  I'm not sure what the COVID restrictions are.
10          But as to Mr. Gilani's point on the deposition, there
11  isn't even -- there's no remaining issue in this case that was
12  covered in either one of their depositions so, you know, I'd
13  have to go back and look at them more carefully, but I don't
14  think there's any deposition testimony that was taken that could
15  either be read to the jury here.
16          THE COURT:  Well, I'm asking a different question.
17  Like, why don't they just come.
18          MR. CAMPSEN:  Well --
19          THE COURT:  If you want them to testify.  If they
20  haven't refused, you know, I know they can't be compelled to
21  come because they're more than 100 miles away, but you can ask
22  them, and they work for you, and they'll probably say yes.
23          MR. CAMPSEN:  Well, one of the issues we've been
24  having in this litigation is the expense that Mr. Gilani has
25  generated through so many of his filings.
```

Bench Ruling                    Gilani v. Teneo

```
 1          I mean, we're now, we're now briefing in the Second
 2  Circuit, while this case is preparing for trial, and so to
 3  require Ms. Head and Mr. Ayers to fly all the way from the UK
 4  and do hotel stays and have Teneo foot the bill for that when
 5  their testimony will probably be an hour, you know, with both
 6  sides done, I think, is an undue burden, particularly given the
 7  length and the costs incurred in this case.
 8          THE COURT:  Well, I can't argue with you that the
 9  burden has been out of proportion to what's reasonable, but, you
10  know, if we're going to have a jury trial and -- you know, I
11  don't know what I'm going to decide on the, on the motion, but
12  if we're going to have a jury trial, you know, that's
13  inconvenient for everybody, and, you know, there's still plenty
14  of time for those individuals to get vaccinated, which, of
15  course, they'd be crazy not to do anyway, and, you know, at this
16  point, given the fact that travel is free and open and also
17  given the fact that, at least as to Mr. Ayers, he's always
18  traveling, he travels at least -- in normal times travels to the
19  U.S. with some frequency, and I don't really see a compelling
20  circumstance that would, on this record, justify remote
21  testimony.
22          If something changes between now and trial, you can
23  bring it up again, but I think the -- you know, if I were to
24  allow it, it would be live and all that, so the jury would,
25  would get to see reactions, but it's --
```

```
 1              MR. CAMPSEN:  Your Honor, if I may --

 2              THE COURT:  It's not as good, it's not as good as in

 3   person to have video.

 4              MR. CAMPSEN:  Agreed, your Honor, and I understand

 5   that.

 6              And if I may, we had -- due to COVID, we had taken all

 7   depositions in this matter by Zoom and so Mr. Gilani was

 8   alleviated of the cost and burden of compelling people outside

 9   of the State of New York to attend depositions.  We just simply

10   agreed that we could do Zoom depositions of people in England,

11   Zoom dispositions of -- he never could have disposed Mr. Ayers

12   and Ms. Head without going to England.

13              MR. GILANI:  I would have gone.

14              MR. CAMPSEN:  Mr. Gilani, I'm speaking.

15              He never could have deposed Mr. Weiland in Florida

16   without going down there and opening up an ancillary proceeding

17   to enforce a subpoena, and so we agreed to all that, and now Mr.

18   Gilani won't agree to live testimony of the two witnesses in the

19   UK?

20              You know, to be quite frank, the cost, as I said, is

21   quite outrageous and his refusal to agree to anything in this

22   case is outrageous at this point, and --

23              THE COURT:  Well, one of the, one of the great things

24   about this country, heh, heh, is that, you know, everybody gets

25   their day in court.  We allow people even if we think their
```

Bench Ruling                    Gilani v. Teneo

1  cases are losers to pursue them, and, you know, I'm looking at

2  what the statute requires and, you know, during the height of

3  COVID, it would have been a compelling circumstance that would

4  have justified doing things remotely.  I just don't feel that

5  way right now, but -- and 'compelling' is a pretty strong word.

6          You know, the issue isn't a matter of fairness, it

7  isn't a matter of, you know, is Mr. Gilani being unreasonable

8  just to torment the company, it's a matter of is there a

9  compelling circumstance, and right now the only compelling

10 circumstance is they live six hours away, but that's a fairly

11 commonplace circumstance.  They're not refusing to come as far

12 as I can tell, so at this point, I'm not prepared to have them

13 testify remotely.  There is -- really, the only -- I mean, it's

14 going to be a very short trial I think, they're going to be the

15 only significant witnesses, and at this point, I think the

16 witnesses should come in person.  If, if things happen

17 COVID-wise in the meantime, I'll revisit.

18          All right, so at our next conference, which Mr. Clark

19 is about to tell us what it is, I will deal with the motions in

20 limine, the motion for summary judgment, in the reverse order

21 because I won't get to the motions in limine if I grant the

22 motion for summary judgment, and we'll talk about the voir dire

23 and tie up any other loose ends.

24          But make sure, Mr. Gilani, don't ask me for an

25 extension of your -- of December 13th because the answer's going

1  to be no, but if you don't properly oppose by that date, then

2  I'm going to consider the motion unopposed, so you can start

3  getting your exhibits together now, you can start labeling them

4  in numerical order and putting tabs in between them and all

5  that, and then you should have plenty of time to respond to the

6  56.1 statement and work on your brief.

7          MR. GILANI:  Thank you.

8          THE COURT:  All right, anything else we should talk

9  about now?

10          THE DEPUTY CLERK:  So --

11          MR. CAMPSEN:  Yes, your Honor, I just want to -- I'm

12  sorry, go ahead.

13          THE COURT:  Oh, we need to get the conference date

14  from Mr. Clark.  Sorry.

15          THE DEPUTY CLERK:  Yes, Judge.

16          January 6th, 2022, at 2:15 p.m.

17          THE COURT:  All right.  And I like to do the final

18  pre-trial conferences in person if at all possible, so let's

19  plan on that.  I think it would be helpful for you both to see

20  the setup that we're going to have for jury selection, and,

21  actually, I'm thinking out loud...I'm just looking at the

22  calendar.

23          Walter, am I right?  I mean, we can't both pick on --

24  Judge Román and I can't both pick on January 12th.

25          THE DEPUTY CLERK:  I believe that is correct, Judge.

1              THE COURT:  Hmm, so we may slip a day or two.  I will

2   -- the earliest it's going to be is January 12th.  It may slip a

3   day or two.  So we'll -- I'll figure that out.  Because I'm

4   realizing we do have one criminal trial ahead of us and they'll

5   need the jury -- they'll need to select a jury in the one room

6   that's big enough, but I'll figure that out and I'll circle back

7   to you when I know for sure, but the 12th will be the earliest.

8              But I think it's a good idea for you to eyeball the

9   setup that we have for COVID.  It's a little different

10  than...you know, than normal.

11             MR. GILANI:  So how will we do that, Judge?

12             THE COURT:  You're going to come in on January 6th in

13  person.

14             MR. GILANI:  Okay, got it, got it.  Thank you.

15             THE COURT:  All right.  Everybody stay well, enjoy

16  your Thanksgiving.

17             MR. CAMPSEN:  But, your Honor, I just have a -- two

18  quick points of clarification.

19             THE COURT:  Okay.

20             MR. CAMPSEN:  Were you saying that Defendants would

21  file the renewed motion for summary judgment to include both the

22  untimeliness argument and anything related to Dr. Shifrin?  I'll

23  just include that in one renewed motion?

24             THE COURT:  Yes.

25             MR. CAMPSEN:  Okay.

```
 1              And then I thought -- I didn't get a date for reply.
 2  I had the 12/3 as my time to file, 12/13 as the opposition.  Is
 3  there a...
 4              THE COURT:  Yeah, I said I was going to give you a
 5  very tight replay date, December 16th.
 6              MR. CAMPSEN:  Okay.
 7              THE COURT:  That's just to give me time to...
 8              MR. CAMPSEN:  Of course, your Honor.
 9              And the last --
10              THE COURT:  If I can do it and give you an answer
11  before January 6th I will, but that will be the latest.
12              MR. CAMPSEN:  Okay.
13              THE COURT:  But I do understand that you'll be
14  preparing.
15              MR. CAMPSEN:  Yes.
16              THE COURT:  I'll try to get to it as soon as I can.
17              MR. CAMPSEN:  Okay.  Thank you, Your Honor.
18              And then the last point I have is, with the pending
19  petition for a writ, I'm concerned that if the trial were to go
20  forward and somehow the writ was granted during the trial,
21  that's going to -- that would certainly have an adverse effect
22  on Teneo, and I can also envision various scenarios where if
23  Teneo prevails and the writ had not been granted or denied, it
24  would give Mr. Gilani an automatic appeal ground, so I'm
25  concerned --
```

1          THE COURT:  Well, to address the question, the appeal

2  is of my order declining to recuse?

3          MR. CAMPSEN:  Yes, your Honor.

4          THE COURT:  Yeah, and I found that that's frivolous.

5          I mean, you can do some research, but my memory from

6  when I was a lawyer was that a frivolous appeal does not deprive

7  the District Court of jurisdiction, but if I'm wrong about that

8  and you're concerned that I don't have jurisdiction and you've

9  got a basis for that concern, you know, maybe we don't try the

10  case and we wait until the Second Circuit rules, and Mr. Gilani

11  misses his window for trial and we'll do it again -- we'll look

12  for another one after the Second Circuit rules.

13          But as I said, I have in the back of my mind that, you

14  know, you can't postpone the day of reckoning by taking a

15  frivolous appeal, and that motion was, was not even close to

16  meritorious.  I mean, the fact that Ms. Jacobs was counsel of

17  record in a previous case of mine, it's completely frivolous.  I

18  have lawyers who have appeared before me dozens of time, so

19  that's not a ground for recusal.

20          And no offense, Ms. Jacobs, but I have no memory of

21  her, so it...it couldn't be --

22          MS. JACOBS:  None taken.

23          THE COURT:  -- more than a baseless motion, so...you

24  know, I imagine the Second Circuit will see it that way, too.

25          MR. CAMPSEN:  In the --

1              THE COURT:  But if you think there's a jurisdictional

2    problem and we ought to adjourn the trial, you know, you should

3    put in a motion to that effect and we'll let Mr. Gilani oppose

4    it and I'll get educated.

5              MR. GILANI:  But I --

6              MR. CAMPSEN:  Hold on, Mr. Gilani.

7              I wasn't suggesting that it was jurisdictional, your

8    Honor, I was just trying to protect Teneo from basically

9    incurring more costs, and I don't disagree with your assessment

10   of the motion at all.

11             THE COURT:  What did you want to say, Mr. Gilani?

12             MR. GILANI:  Yes, so I have served five doctors --

13   four doctors already and -- about being a witness.  Now, the

14   question is that -- the dates I have told them and they have all

15   agreed just let them know.  Fifth one I'll be serving tomorrow,

16   Dr. Omar Sayeed, the subpoena to come in, with the cost.

17             The question I have is that, can they be -- when I'm

18   going to call them, I'm not going to call them three days to sit

19   there.  What's your thoughts on that, Judge?

20             THE COURT:  Yeah, they don't -- you know, usually the

21   subpoena will have a date on it of the first date of trial, but

22   they really don't have to come until they're going to testify,

23   so --

24             MR. GILANI:  Exactly.

25             THE COURT:  -- if you have five minutes for the first

Bench Ruling                    Gilani v. Teneo

1  day and you know there's no way you're going to get to a

2  particular witness until the second day, you're allowed to tell

3  that witness that he or she need not come until the second day.

4          MR. GILANI:  Got it.

5          THE COURT:  However, you can't run out of witnesses,

6  so you should have enough witnesses to fill up the day each day,

7  but for the doctors, you can -- especially, you know, doctors

8  are always so difficult about their schedules, you can make

9  arrangements with them, you can -- and I'm happy for either side

10  to take a witness out of order if it'll accommodate the

11  witness's schedule.

12          So let's say we start on Wednesday.  We pick the jury

13  in the morning, we start with witnesses in the afternoon and you

14  have a doctor who can only come, you know, Thursday morning, but

15  you weren't planning on calling him, you know, maybe you'll

16  still be testifying on Thursday morning yourself, Mr. Gilani,

17  I'm willing to accommodate witnesses by breaking and letting

18  them testify out of order if need be.  I don't think you should

19  have to make them come more than one day.

20          MR. GILANI:  Thank you.

21          THE COURT:  But just make sure you have enough

22  witnesses to keep the jury busy each day.

23          And we will probably be sitting...I have to figure

24  this out, too.  We'll either be sitting nine-thirty to

25  two-thirty or eleven to four with one thirty-minute break in the

 1  middle.  I'll be able to give you more information on that as we

 2  get closer.

 3              MR. GILANI:  Thank you.

 4              THE COURT:  All right.

 5              MR. GILANI:  Thank you very much, and I think Teneo

 6  will be able to see White Plains where I live, so it's good.

 7              THE COURT:  All right, everybody enjoy the holiday.

 8  Bye-bye.

 9              MR. GILANI:  Have a happy Thanksgiving.

10              Certified to be a true and accurate transcript.

11

12              _____

13              TABITHA DENTE, SR. COURT REPORTER

14

15

16

17

18

19

20

21

22

23

24

25